■ In the Matter of the Accounting of Abraham Alpert, as Trustee of a Trust Created by Hyman Alpert, et al., Appellants. (Appeal No. IA.) In the Matter of the Accounting of Abraham Alpert, as Trustee of a Trust Created by Hyman Alpert, et al., Appellants. (Appeal No. IB.) In the Matter of the Accounting of Abraham Alpert, as Trustee of a Trust Created by Hyman Alpert, et al., Appellants. (Appeal No. IC.) In the Matter of the Estate of Hyman Alpert, Deceased. Ruth Alpert, Appellant. (Appeal No. II.) In the Matter of the Estate of Hyman Alpert, Deceased. Ruth Alpert et al., Respondents. (Appeal No. III.)—Orders of the Surrogate's Court, New York County (Marie M. Lambert, S.), entered December 13, 1985, which, *inter alia,* granted motions by beneficiaries of three inter vivos trusts requiring distribution of principal and current and future income to the beneficiaries, affirmed, without costs or disbursements.

In 1951, decedent Hyman Alpert created three virtually

identical inter vivos trusts for the benefit of each of his three children. The trustees were directed to accumulate principal and income for the benefit of the beneficiary of each trust. The trustees were authorized to distribute sums in their sole and absolute discretion, to be exercised, however, "for the good and welfare of the beneficiary". The decedent expressly noted that the term "good and welfare" was to be liberally construed and that his primary concern in creating each trust was for the income beneficiary of such trust. The decedent also provided in each trust that the beneficiary was to receive $5,000 at age 18 and $10,000 upon marriage or reaching age 25. The Surrogate. *inter alia,* directed payment by the trustees to each beneficiary of the $15,000, since the conditions set forth above were met, in addition to the continuing distribution of income.

The dissent would reverse solely as to these three orders of the Surrogate which directed the trustees to distribute principal and current and future income to the beneficiaries.

Contrary to the conclusion of the dissent that a hearing was necessary before the Surrogate directed payment of principal required by the terms of the trust and current and future income to the beneficiaries, under the circumstances herein, the conclusory and unsubstantiated claim of the trustees that they personally advanced the $15,000 payments did not raise issues of fact requiring a hearing before being rejected by the Surrogate. The trust accounting, filed and sworn to by the trustees, did not reflect any payment of the principal distribution to the beneficiaries or any such debt. The payments, obviously, were never made.

Likewise, there was no factual issue as to whether the cutoff of income by the trustees was justifiable. The Surrogate correctly held that the trusts' clearly stated preference for the income beneficiaries must govern, and further, that the trustees' contention that the income might be used to finance litigation against them to obtain part of the $400 million Alpert Family Fund was no sufficient reason to refuse to pay out the income. We, as did the Surrogate, note that the trusts provide for the "good and welfare" of the beneficiaries, and the beneficiaries' legal expenses to obtain funds to which they are entitled clearly fall within that purpose.

We have examined the appellants' remaining contentions and find them to be without merit. Concur—Ross, Asch and Kassal, JJ.

Kupferman, J. P., dissents in part in a memorandum as

follows: In these several appeals involving marital, residuary and inter vivos trusts, I dissent in part with respect to the three inter vivos trusts created by the decedent Hyman Alpert.

We have here on internecine family dispute, which, perhaps, has colored the outcome. Without going into various details, the three inter vivos trusts were created in 1951, funded by $7,500 each, which, because of prudent real estate investments, burgeoned into substantial values. The trusts provided that principal and income could be accumulated and that the amount and time of payments should be "in the sole and absolute discretion of the Trustees, which shall be exercised for the good and welfare of the beneficiary."

While there was provision for remainder, the instrument also stated that the primary concern of the donor "is for the income beneficiary".

The basic over-all dispute is between the brothers of the decedent and their families as against the decedent's surviving spouse and children, those children being the beneficiaries of the inter vivos trusts. Because the brothers are the trustees, they are considered suspect in terms of acting for the "good and welfare" of the beneficiaries.

The trusts provided for a payment to each beneficiary of a total of $15,000 upon marriage or reaching the age of 25, all of which conditions have been attained. The $15,000 payment for each is sought, plus distribution of income.

The Surrogate, seemingly on the basis of the conflict of interest, directed the specific payments, plus distribution of income.

It is contended that the payments had actually been made at a much earlier date and, moreover, that, in their discretion, the trustees are accumulating income to be added to principal and cannot be directed to expend it.

Lending credence to this latter position is the fact that accumulations started in 1975, when the grantor died, although the litigation and controversy did not commence until 1981. Therefore, it may be that the trustees, in their "sole and absolute discretion", acted in good faith with respect to the accumulations. Accordingly, it would seem that a hearing would be in order to determine whether the accumulation is taking place in the judgment of the trustees as being beneficial or whether they lack good faith because of the family controversy. A summary disposition does not sufficiently probe this aspect, and, accordingly, I would reverse to that extent

and direct a hearing with respect to the three inter vivos trusts.