**Fred BROWN, Plaintiff–Appellant,**

v.

**BLUE CROSS AND BLUE SHIELD OF ALABAMA, INC., et al., Defendants–Appellees.**

**No. 89–7151.**

United States Court of Appeals, Eleventh Circuit.

April 25, 1990.

Leo E. Costello, Costello & Stott, Birmingham, Ala., for plaintiff-appellant.

Lawrence B. Clark, Lange, Simpson, Robinson & Somerville, Sally S. Reilly, Timothy A. Palmer, Charles C. Pinckney, Birmingham, Ala., for defendants-appellees.

Before JOHNSON, Circuit Judge, RONEY *, Senior Circuit Judge, and MELTON **, District Judge.

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\** Honorable Howell W. Melton, U.S. District Judge for the Middle District of Florida, sitting by designation.

MELTON, District Judge:

Fred Brown ("Brown") was denied hospitalization benefits under a group health plan because he had not obtained a precertification of the hospital admission. The district court held that the decision to deny benefits under this ERISA plan was not arbitrary and capricious and entered summary judgment for defendants. Brown argues on appeal that there were material issues of fact and that the district court failed to apply the governing law. We reverse and remand for further proceedings.

Brown, an employee of Truck Rentals of Alabama, Inc., was a participant in Truck Rentals' group health care plan established pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Blue Cross and Blue Shield of Alabama, Inc. ("Blue Cross"), provides insurance coverage under the plan for a monthly premium.

The plan automatically covers the cost of in-patient hospital care arising from a medical emergency but provides coverage in other cases only when Blue Cross has "approved and precertified the admission and stay" before the participant's admission to the hospital. Brown was in the hospital twice for the same condition. The first visit was covered as a medical emergency; the second was not.

Brown was admitted to St. Charles General Hospital in New Orleans, Louisiana, because of a sinus condition. The first hospitalization lasted from September 21 through September 26, 1987. The second began on September 29 and ended on October 6, 1987. During the second stay, Brown underwent surgery for his sinus condition. The trial court found that no preadmission certification was obtained for either period of hospitalization. Without a preadmission certification, coverage for hospital expenses depends upon whether a hospitalization was compelled by a "medical emergency."

When claims were filed for plan benefits, Blue Cross initially denied all coverage. The company later extended coverage to the first hospitalization as a medical emergency, but refused coverage for the second. Brown filed suit to compel payment for the second period of hospitalization. He urged two theories favoring coverage, one in which the second period is treated as a continuation of the first and another in which the second period is treated as an independent emergency situation.

The district court reviewed the denial of benefits under an arbitrary and capricious standard, consistent with the law in this Circuit at the time of the decision. *See, e.g., Hoover v. Blue Cross & Blue Shield of Ala.*, 855 F.2d 1538, 1541 (11th Cir.1988); *Griffis v. Delta Family–Care Disability & Survivorship Plan*, 723 F.2d 822, 825 (11th Cir.) (adopting district court opinion), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3514, 82 L.Ed.2d 823 (1984). Brown asserts that the Supreme Court's recent decision of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), decided after this case was before the district court, requires a de novo standard of review. That case, to the contrary, demonstrates that an arbitrary and capricious standard continues to be applicable here.[1]

Although *Firestone* does not alter in form the standard applied to review of the fiduciary's decision, the substance of review was subtly altered by the opinion. We examine herein the impact of this change. Our application of the *Firestone* opinion yields the conclusion that the decision of the district court must be reversed and remanded.

## SCOPE OF REVIEW

Our review of the district court's grant of summary judgment begins with a brief statement of its scope. Judge Johnson has

---

**1.** *Firestone* refers to the standard of review in discretionary situations as abuse of discretion. 109 S.Ct. at 956. We have equated the arbitrary and capricious standard and the abuse of discretion standard in our post-*Firestone* cases. *See,* *e.g., Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir.1989); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38–39 (11th Cir.1989). We continue to use the terminology interchangeably.

identified an ambiguity in our prior statements of the scope of review in ERISA benefit denial review cases. *See Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1140–41 (11th Cir.1989) (Johnson, J., concurring and dissenting). The issue arises from the statement in *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37 (11th Cir.1989), that "[i]n assessing Guy's contention that the Fund improperly denied him benefits, therefore, we must determine whether the district court's finding that the Fund's decision was arbitrary and capricious is clearly erroneous." *Id.* at 39. Read literally, this statement apparently conflicts with our precedents that have uniformly treated the conclusion that an action is arbitrary and capricious as a matter of law subject to de novo review. *See, e.g., Harris v. Pullman Standard, Inc.*, 809 F.2d 1495, 1499 (11th Cir.1987); *Anderson v. Ciba–Geigy Corp.*, 759 F.2d 1518, 1522 (11th Cir.), *cert. denied*, 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985); *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566, 1569 (11th Cir.1985); *Helms v. Monsanto Co.*, 728 F.2d 1416 (11th Cir.1984). But *Guy* should not be read so literally. The discussion following the statement of the scope of review considers the district court's factual findings under the clearly erroneous standard but visits relevant legal principles anew. *See Guy*, 877 F.2d at 39–40. The actual exercise of de novo review over the legal conclusion belies any misconception otherwise suggested by the opinion.

This appeal from grant of summary judgment is subject to plenary review. *See, e.g., Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989). We therefore apply the same legal standards that bound the district court. *Id.* The standard governing the grant of summary judgment is well-known and well expressed elsewhere, *see id.* at 933–34, so it will not be repeated here.

In our review of the substantive issue whether Blue Cross was arbitrary and capricious in its denial of Brown's claim for benefits, we "determine whether there was a reasonable basis for the decision [to deny benefits], based on the facts as known to the [fiduciary] at the time the decision was made." *Jett*, 890 F.2d at 1139. The concept of "reasonable basis," however, must be modified consistent with the following discussion of the application of the arbitrary and capricious standard in the present context.

## STANDARD OF REVIEW FOR FIDUCIARY DECISIONS

■ In *Firestone*, the Court established de novo judicial review of an ERISA benefits denial decision "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 109 S.Ct. at 956. Appellant does not argue that this principle would not apply to Blue Cross in this case. The Group Hospital and Major Medical Contract between Baggett Transportation Company and Blue Cross, which we take to be the ERISA benefit plan document[2] (hereinafter "Contract Plan"), confers discretion on Blue Cross in the matter of benefits determinations. The provision states:

As a condition precedent to coverage, it is agreed that whenever [Blue Cross] makes reasonable determinations which are not arbitrary and capricious in the administration of the [plan] (including, without limitation, determinations whether services, care, treatment or supplies are Medically Necessary ...), such determinations shall be final and conclusive.

Contract Plan, § IX(K). Notably, the division of ERISA duties between Baggett Transportation Company and Blue Cross provides:

---

2. All employee benefit plans must be established pursuant to a written instrument. 29 U.S.C. § 1102(a)(1) (1982). The record on appeal contains this contract and the summary booklet describing plan benefits. The booklet explains "[a]ll benefits are subject to the terms, conditions and limitations of the master contract be-

tween your group and Blue Cross and Blue Shield of Alabama." An affidavit submitted in support of Blue Cross' motion for summary judgment identifies the contract as the plan. Evidently, Baggett Transportation entered into the contract with Blue Cross on behalf of Truck Rentals.

It is expressly understood and agreed by the parties to the Contract that any and all duties assigned by ERISA to the "plan administrator" shall be deemed for purposes of this Contract as duties of the Employer and not those of [Blue Cross]. *Id.*, § XIII(D)(1). Thus, Blue Cross exercises its discretion as a fiduciary, not as plan administrator.[3] For our purposes, however, this distinction is not of consequence because *Firestone* applies equally to the decisions of fiduciaries and the plan administrator.

Before *Firestone*, several circuits undertook to vary the deference accorded trustee or fiduciary decisions, within the framework of the arbitrary and capricious standard, in reaction to the presence or absence of conflicting interests on the part of the decisionmaker. *See, e.g., Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 895 (10th Cir.1988); *Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1052–53 (7th Cir.1987); *Holland v. Burlington Indus., Inc.*, 772 F.2d 1140, 1149 (4th Cir.1985), *sum. aff'd*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986); *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320, 328–29 (2d Cir.1985), *sum. aff'd*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); *Jung v. FMC Corp.*, 755 F.2d 708, 711–12 (9th Cir.1985); *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982); *Maggard v. O'Connell*, 671 F.2d 568, 571 (D.C.Cir.1982); *see also Gesina v. General Elec. Co.*, 162 Ariz. 39, 780 P.2d 1380, 1383–85 (App.) (adopting variable deference in original opinion decided before *Firestone* and adhering thereto in post-*Firestone* opinion on reconsideration), *rev. denied*, 162 Ariz. 39, 780 P.2d 1380 (1989). The Court's opinion in *Firestone* serves to underscore the perceptiveness of these cases.[4] In the same paragraph in which the Court gave its approval to plans that confer discretion on benefits decisionmakers, the Court added, "Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operat-

---

**3.** We observe, without resolving, a contradiction between the quoted portions of the benefit plan. Blue Cross is promised finality for "reasonable determinations which are not arbitrary and capricious in the administration of the Contract...." Since the contract is the benefit plan, Blue Cross is actually gaining discretion in the administration of the plan. At the same time, however, Blue Cross disavows any role as plan administrator. We leave reconciliation of this contradiction to Blue Cross.

**4.** Both *Van Boxel* and *Jung*, it should be noted, were cited by the *Firestone* Court. *See* 109 S.Ct. at 952, 953. While it is accurate to describe *Firestone* as having "swept the standard of review board clear," *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1185 (4th Cir.1989), the effect of the opinion was in other respects unremarkable. "[T]he Court prescribed rules for judicial review of ERISA benefit denials which effectively supplanted all the lower court approaches ...—*but without rejecting all the concepts of review embodied in those approaches.*" *Id.* (emphasis added). We have previously proceeded from this premise. *See Jett*, 890 F.2d at 1139; *Guy*, 877 F.2d at 38–39 (applying pre-*Firestone* principles concerning meaning of arbitrary and capricious standard); *cf. Boyd v. Trustees of United Mine Workers Health & Retirement Funds*, 873 F.2d 57, 60 (4th Cir.1989) ("It is obvious that to the extent it would be arbitrary and capricious under our pre-*Firestone* standard to deny benefits on such a basis, it would be an abuse of discretion to deny them under the *Bruch* standard."); *Lowry v. Bankers Life and Casualty Retirement Plan*, 871 F.2d 522, 525 (reserving question whether abuse of discretion standard in *Firestone* "is equivalent to or less strict than our circuit's preexisting arbitrary and capricious standard"), *denying reh'g to* 865 F.2d 692 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 152, 107 L.Ed.2d 111 (1989); *Batchelor v. International Bhd. of Elec. Workers Local 861 Pension & Retirement Fund*, 877 F.2d 441, 444–48 (5th Cir. 1989) (decision subsequent to *Lowry* which applies pre-*Firestone* Fifth Circuit arbitrary and capricious principles as guidance in applying *Firestone*'s abuse of discretion standard). For pre-*Firestone* cases finding that the action of a fiduciary was arbitrary or capricious, see *Deak v. Masters, Mates & Pilots Pension Plan*, 821 F.2d 572 (11th Cir.1987); *Harris v. Pullman Standard, Inc.*, 809 F.2d 1495 (11th Cir.1987); *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566 (11th Cir.1985); *Helms v. Monsanto Co.*, 728 F.2d 1416 (11th Cir.1984). For cases finding that the action was not arbitrary and capricious, see *Hoover v. Blue Cross & Blue Shield of Ala.*, 855 F.2d 1538 (11th Cir.1988); *Chilton v. Savannah Foods & Indus., Inc.*, 814 F.2d 620 (11th Cir.1987); *Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518 (11th Cir.1985); *Griffis v. Delta Family–Care Disability*, 723 F.2d 822 (11th Cir.1984); *Fine v. Semet*, 699 F.2d 1091 (11th Cir.1983); *Paris v. Profit Sharing Plan*, 637 F.2d 357 (5th Cir. Feb.1981); *Bayles v. Central States, Southeast & Southwest Areas Pension Fund*, 602 F.2d 97 (5th Cir.1979).

ing under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.'" *Firestone*, 109 S.Ct. at 956 (quoting Restatement (Second) of Trusts § 187, Comment *d* (1959)).

Our task is to develop a coherent method for integrating factors such as self-interest into the legal standard for reviewing benefits determinations. This task reaches the height of difficulty in a case such as the one before us, where an insurance company serves as the decisionmaking fiduciary for benefits that are paid out of the insurance company's assets. Several features distinguish insurance policy plans from other forms of ERISA plans.

The most familiar distinction lies in the application of certain state laws to ERISA plans. Although other forms of ERISA plans may offer the same kinds of health or other benefits that insurance policy plans offer, only insurance policy plans are subject to "any law of any State which regulates insurance." *See* 29 U.S.C. § 1144(b)(2)(A) (savings clause); *see also id.* § 1144(b)(2)(B) (so-called deemer clause, which exempts employee welfare plans from insurance regulation). Congress intended a distinction between insured and uninsured plans such that the former are subject to state regulations, for example, mandated-benefit laws, that have the effect of transferring or spreading a policyholder's risk, that are an integral part of the policy relationship between the insurer and the insured, and that are limited to entities within the insurance industry. *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 738–47, 105 S.Ct. 2380, 2388–93, 85 L.Ed.2d 728 (1985) (applying mandated-benefit law to group health insurance ERISA plan); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (refusing to apply general contract law causes of action against group insurance policy).

Another, more important distinction derives from the trust aspect of ERISA plans. The trust nature of employee benefit plans is fundamental to ERISA. The statute provides, with enumerated excep-

tions, "all assets of an employee benefit plan shall be held in trust by one or more trustees." 29 U.S.C. § 1103(a). Insurance policy plans fall within the exceptions. The policy is an asset of the plan, but the insurer's assets are not thereby included in the plan. *Id.* § 1101(b)(2). Moreover, this asset of the plan, the insurance policy, is not an asset held in trust for the beneficiaries of the plan because the trust requirements of section 1103(a) do not apply "to assets of a plan which consist of insurance contracts or policies issued by an insurance company qualified to do business in a State." *Id.* § 1103(b)(1). Inasmuch as "[t]he basis for the deferential standard of review in the first place was the trust nature of most ERISA plans," *Moon v. American Home Assurance Co.*, 888 F.2d 86, 89 (11th Cir.1989), the most important reason for deferential review is lacking.

█ A final distinction involves the inherent conflict between the roles assumed by an insurance company that administers claims under a policy it issued. When vested with discretion to interpret the insurance policy *qua* ERISA benefits plan, the insurance company *qua* fiduciary is measured by a standard of loyalty, *see* 29 U.S.C. § 1104(a)(1)(A), and a standard of care, *see id.* § 1104(a)(1)(B), in the exercise of its duties, *see Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570–72, 105 S.Ct. 2833, 2840–41, 86 L.Ed.2d 447 (1985); *Local Union 2134, U.M.W. of Am. v. Powhatan Fuel, Inc.*, 828 F.2d 710, 713 (11th Cir.1987). Because an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business. That is, when an insurance company serves as ERISA fiduciary to a plan composed solely of a policy or contract issued by that company, it is exercising discretion over a situation for which it incurs "direct, immediate expense as a result of benefit determinations favorable to [p]lan participants." *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir.1989) (explaining threshold for economic conflict of interest by fiduciary); *see also Slover v. Boral Henderson Clay*

*Prod. Inc.,* 714 F.Supp. 825, 833–34 (E.D. Tex.1989); *Gesina,* 780 P.2d at 1383. We conclude, then, as has one district judge in an opinion since *Firestone,* that a "strong conflict of interest [exists] when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims...." *Jader v. Principal Mutual Life Ins. Co.,* 723 F.Supp. 1338, 1343 (D.Minn.1989).

The inherent conflict between the fiduciary role and the profit-making objective of an insurance company makes a highly deferential standard of review inappropriate. (The common-law basis for this proposition is developed *infra.*) Since the *Firestone* decision we have not considered any comparable situation. Four cases have been decided in this Circuit thus far. We briefly review each.

In *Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37 (11th Cir.1989), we affirmed the district court's conclusion that the trustees of a self-funded employee benefit plan acted in an arbitrary and capricious manner by refusing to pay a beneficiary's medical bills. We did not reach any issue related to conflicting interests because the trustees' decision did not survive the most deferential standard of review. *See id.* at 39.

In *Moon v. American Home Assurance Co.,* 888 F.2d 86 (11th Cir.1989), we applied the de novo standard of review to the denial of benefits by an insurance company on a death benefits policy. An individual, not the insurance company, was the administrator of the plan and no discretionary authority was vested in the company (thus precluding it from gaining fiduciary status). *Id.* at 88. We naturally had no occasion to examine the arbitrary and capricious standard.

Similarly, in *Baker v. Big Star Div. of the Grand Union Co.,* 893 F.2d 288 (11th Cir.1989) (as amended), we remanded a case for application of the de novo standard to the denial of a claim for disability benefits by an insurance company that acted as claims administrator for a self-insured plan. We absolved the insurance company of either ERISA plan administrator or fiduciary status based on its purely ministerial role as an administrative servicing agent for claims processing. *Id.* at 290. Because the insurance company did not pay the benefits from its coffers and did not exercise discretion under the employee benefit plan, *Baker* does not shed light on the issues that presently concern us.

Finally, in *Jett v. Blue Cross & Blue Shield of Alabama,* 890 F.2d 1137 (11th Cir.1989), we applied the arbitrary and capricious standard to the benefits determination made by an insurance company pursuant to a clause conferring discretionary authority in nearly the same terms as the ERISA plan in this case. The crucial difference in *Jett,* however, is the lack of any conflicting interest on the part of the insurance company. The plan was self-insured, with the insurance company acting as administrator and receiving full reimbursement from the plan sponsor for covered medical claims. *Id.* at 1138. The insurance company would not suffer any direct, immediate expense as a result of benefit determinations favorable to plan participants. Consequently, the insurance company *qua* plan administrator deserved and was accorded the highest deference in review of its claims denial decision. *Cf. Bali v. Blue Cross & Blue Shield Ass'n,* 873 F.2d 1043, 1047 n. 5 (7th Cir.1989) (no conflict of interest implicated where third party made determinations on benefits).

■ In summary, we face for the first time (since *Firestone* [5]) how to reconcile

---

5. In *Hoover, supra,* 855 F.2d at 1541, we applied the arbitrary and capricious standard to a challenge to an insurance company's interpretation of a plan provision that determined the amount of co-payment due from a plan beneficiary. This pre-*Firestone* opinion expressly acknowledges the element of the fiduciary's good faith, *id.,* but ruled against the beneficiary because he provided no record evidence to reasonably support an inference of bad faith, *see id.* at 1542–43. The inherent conflict of interest which we identify today was not implicated in *Hoover.* The beneficiary's co-payment went to the health care service provider, not the insurance company. Therefore the insurance company was not interpreting a plan provision that affected its payments or profits. Additionally, the opinion in *Hoover* does not reveal whether the insurance

the inherent conflict posed by benefits determinations made by an insurance company administering its own policy. While de novo review is an attractive avenue for controlling the exercise of discretion contrary to the interests of the beneficiaries, the application of this strict standard would deny Blue Cross the benefit of the bargain it made in the insurance contract.[6] *See Firestone*, 109 S.Ct. at 954. The *Firestone* Court firmly endorsed the ability of parties to "agree[ ] upon a narrower standard of review." *Id.* at 956. At the same time, we must control the tension between contrac-

tual standards of review and an interpretation of ERISA that "would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." *Id.* We therefore hold that the abuse of discretion, or arbitrary and capricious, standard applies to cases such as this one, but the application of the standard is shaped by the circumstances of the inherent conflict of interest.

In saying that Blue Cross' benefits determinations are subject to review by the arbitrary and capricious standard, we recognize that the concept of arbitrary and capricious

---

company paid benefits from its own funds or from a self-insurance fund set up by the employer. We infer from excerpts from an affidavit and from the district court opinion, *see id.* at 1542, that the insurance company administered a fund established by the employer. Thus *Hoover* is on par with *Jett*.

In a district court opinion which we affirmed pursuant to 11th Cir.R. 36–1 after *Firestone* was decided, three circumstances present here entered into the district court's determination that the fiduciary was arbitrary and capricious in denying benefits. *McKinnon v. Blue Cross–Blue Shield of Ala.*, 691 F.Supp. 1314, 1319–22 (N.D. Ala.1988), *aff'd*, 874 F.2d 820 (11th Cir.1989) (Table). First, the claims evaluator had a direct stake in the profitability of one hospital, *see id.* at 1316, and his denial of the claim rested in part on the ability of that hospital to render services which the beneficiary sought elsewhere. The district court expressed severe reservation over this conflict of interest. *See id.* at 1318–21. Second, Blue Cross initially granted, then denied the claim. *See id.* at 1317. This reversal of position factored into the district court's evaluation of the evidence concerning the reasonableness of the respective interpretations. *See id.* at 1321. Last, the parties disputed the existence of an emergency as defined in the plan. *See id.* at 1318–19. The district court held that the concept of emergency had to conform to the unique facts of the case, which included a bungled diagnosis at one hospital and the attendant seeking of corrective care at another facility. *See id.* at 1321. While we affirmed this case without creating binding precedent, we recognize today the sound foundations for the district court's concerns.

6. We could overcome the parties' freedom of contract by finding that a deferential standard of review is inconsistent with ERISA. The fiduciary duties section, for instance, requires adherence to the written plan documents unless their provisions conflict with statutory duties. *See* 29 U.S.C. § 1104(a)(1)(D); *Deak v. Masters, Mates & Pilots Pension Plan*, 821 F.2d 572, 577 n. 8 (11th Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). One con-

flict might be identified between the contractual provision for deferential review and the standard of loyalty itself. Another source of conflict could arise from the list of prohibited transactions between the plan and a fiduciary. 29 U.S.C. § 1106(b). This list includes transactions that resemble the kinds of activities that an insurance company does in its business role that it would be barred from doing in its fiduciary role. The exceptions of section 1108(b) do not appear to apply. We observe that several states require trustees to apply to the court for instructions in some situations where exercise of their discretion faces a possible conflict of interest. *See* 3 A. Scott & W. Fratcher, *The Law of Trusts* § 187.6 (4th ed.1988); *cf. McMahon v. McDowell*, 794 F.2d 100, 110 (3d Cir.1986) (ERISA fiduciaries may have to step aside or apply to court for instruction in some conflict of interest situations), *cert. denied*, 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986).

We do not find such a course compelled by *Firestone*. That opinion is ambiguous to some extent in providing guidance for the present circumstances. Strong language endorses the right of the parties to contract for a standard of review, but that right is premised on assumptions regarding trust law that do not apply to insurance policy plans. Appellees' counsel suggested at oral argument that language in the opinion applying the de novo standard of review "regardless of whether the plan at issue is funded or unfunded," *Firestone*, 109 S.Ct. at 956, indicates the Court's unwillingness to draw a distinction. This argument, however, mistakes the distinction between funded and unfunded for a very different distinction between insured and uninsured plans. While a distinction can be drawn reasonably, the *Firestone* opinion is written broadly enough, albeit dicta as applied here, to encompass review of insurance policy plans.

We are not prepared to abandon the use of the arbitrary and capricious standard for insurance policy plans that confer discretion. The duty of loyalty remains adequately preserved by finding abuse of discretion more readily when conflicting interests are apparent.

"must be contextually tailored." *Maggard,* 671 F.2d at 571. The degree of deference exercised in review of a fiduciary's decision ranges from slight to great, depending upon the dynamics of the decisionmaking process. *See Van Boxel,* 836 F.2d at 1052–53. In Posnerian terms, "the arbitrary and capricious standard may be a range, not a point." *Id.* at 1052; *accord Lowry v. Bankers Life & Casualty Retirement Plan,* 871 F.2d 522, 525 n. 6 (5th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 152, 107 L.Ed.2d 111 (1989).

The disinterested, impartial decisionmaker deserves the greatest deference. "Where ... the claimant does not argue or is unable to show that the trustees had a significant conflict of interest, we reverse the denial of benefits only if the denial is completely unreasonable." *Van Boxel,* 836 F.2d at 1053. *Compare De Nobel,* 885 F.2d at 1191–92 (no evidence to suggest decision was tainted by conflict of interest and explanation of denial was reasonable) *with Guy,* 877 F.2d at 39–40 (conflict of interest issue not raised, but trustees acted unreasonably by denying benefits, without affording claimant notice or right of appeal, on basis of uncertain equitable right of recovery through subrogation). Correspondingly, "[w]hen the members of a tribunal—for example, the trustees of a pension fund—have a serious conflict of inter-est, the proper deference to give may be slight, even zero; the decision if wrong may be unreasonable." *Van Boxel,* 836 F.2d at 1052.

By describing this range we have drawn merely the outer boundaries of our inquiry. We now must fix more precisely the method for evaluating the abuse of discretion. The *Firestone* Court has directed us to consult common law principles of trusts [7] and has facilitated the task further by mentioning a particularly illuminating source by name.

Comment *d* to section 187 of the *Restatement (Second) of Trusts* lists six factors to consult to determine the question whether a trustee is guilty of abuse of discretion in exercising or failing to exercise a power.[8] These factors are:

(1) the extent of the discretion conferred upon the trustee by the terms of the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising the power; (6) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries.

---

**7.** Because we have restated the standard as arbitrary and capricious, the temptation exists to consult precedent regarding the use of that standard to review administrative agency decisions. *See, e.g., Jett,* 890 F.2d at 1141–42 (Johnson, J., concurring and dissenting) (citing and quoting from *Motor Vehicle Mfrs. Ass'n v. State Farm Auto Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). In some instances an overlap is evident. *Compare, e.g., id.* (extracting duty to investigate from *Motor Vehicle Mfrs. Ass'n*) *with Jader,* 723 F.Supp. at 1342–43; *Slover,* 714 F.Supp. at 832–33; *Teeter v. Supplemental Pension Plan,* 705 F.Supp. 1089, 1095 (E.D. Pa.1989) (fiduciary has affirmative duty to gather information bearing on beneficiary's claim that is reasonably obtainable). We express caution, however, at wholesale importation of administrative agency concepts into the review of ERISA fiduciary decisions. Use of the administrative agency analogy may, ironically, give too much deference to ERISA fiduciaries. Decisions in the ERISA context involve the interpretation of contractual entitlements; they "are not discretionary in the sense, familiar from administrative law, of decisions that make policy under a broad grant of delegated powers." *Van Boxel,* 836 F.2d at 1050. Moreover, the individuals who occupy the position of ERISA fiduciaries are less well-insulated from outside pressures than are decisionmakers at government agencies. *See Maggard,* 671 F.2d at 571. We therefore concentrate on the common law trust principles to evaluate the application of the arbitrary and capricious standard. Of course, the common law we consider includes the cases decided under the Labor Management Relations Act. *See, e.g., Sharron v. Amalgamated Ins. Agency Servs., Inc.,* 704 F.2d 562 (11th Cir.1983) (decided under LMRA, not ERISA, but subsequently applied to ERISA situations).

**8.** Our predecessor circuit had occasion to apply some of these principles in the breach of trust context. *See Investors Syndicate of Am., Inc. v. City of Indian Rocks Beach,* 434 F.2d 871, 878–88 (5th Cir.1970). The principles are related to the common law duty of loyalty, *see id.* at 878, which has a statutory counterpart in ERISA.

Restatement (Second) of Trusts § 187, Comment *d*.[9] The first factor is essentially considered in deciding that the arbitrary and capricious standard applies. The second and third factors have a constant quality dictated by ERISA. Adaptation of the remaining principles to the ERISA context is our next step.

The sixth factor is the most significant in this case. (We have set forth *supra* the analysis of the conflict of interest present in this case.) A finding of a conflicting interest has a tremendous impact on the evaluation of the fiduciary's actions.

> [T]he beneficiary need only show that the fiduciary allowed himself to be placed in a position where his personal interest *might* conflict with the interest of the beneficiary. It is unnecessary to show that the fiduciary succumbed to this temptation, that he acted in bad faith, that he gained an advantage, fair or unfair, that the beneficiary was harmed. Indeed, the law presumes that the fiduciary acted disloyally, and inquiry into such matters is foreclosed. The rule is not intended to compensate the beneficiary for any loss he may have sustained or to deprive the fiduciary of any unjust enrichment. Its sole purpose and effect is prophylactic....

*Fulton Nat'l Bank v. Tate*, 363 F.2d 562, 571–72 (5th Cir.1966) (emphasis in original). In other words, one reason for limiting the deference when the fiduciary suffers a conflict of interest is to discourage arrangements where a conflict arises.[10] *Cf. Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142–43, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985) ("the avoidance of

conflicts of interest" is among the primary statutory duties imposed by ERISA on fiduciaries); *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.) (fiduciaries must "avoid placing themselves in a position where their acts [in their other roles] will prevent their functioning with the complete loyalty to participants demanded of them as [fiduciaries]"), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).

The matter of conflicting interests touches on the fifth factor, improper motive, as well.

> Although ordinarily the court will not inquire into the motives of the trustee, yet if it is shown that his motives were improper or that he could not have acted from a proper motive, the court will interpose. In the determination of the question whether the trustee in the exercise of a power is acting from an improper motive the fact that the trustee has an interest conflicting with that of the beneficiary is to be considered.

Restatement (Second) of Trusts § 187, Comment *g; accord* 3 A. Scott & W. Fratcher, *The Law of Trusts* § 187.5, at 47 (4th ed. 1988) [hereinafter *"Scott on Trusts"*]. The rationale for this approach is clear. A conflicted fiduciary may favor, consciously or unconsciously, its interests over the interests of the plan beneficiaries. *See Tate*, 363 F.2d at 571. The judicial hesitation to inquire into the fiduciary's motives will leave the beneficiaries unprotected unless the existence of a substantial conflicting interest shifts the burden to the fiduciary to demonstrate that its decision is not infected with self-interest. *See id.* at

**9.** A leading treatise lists nearly identical factors:

> In determining whether the trustee is acting within the bounds of a reasonable judgment the following circumstances may be relevant:
> (1) the extent of discretion intended to be conferred upon the trustee by the terms of the trust;
> (2) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged;
> (3) the circumstances surrounding the exercise of the power;
> (4) the motives of the trustee in exercising or refraining from exercising the power;

> (5) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries.

3 A. Scott & W. Fratcher, *The Law of Trusts* § 187, at 15 (4th ed.1988).

**10.** ERISA has not fully incorporated the common law position on conflicting loyalties. Section 1108 creates exceptions to the list of prohibited transactions in section 1106. The purpose of those exceptions is "simply [to] make it possible to justify transactions which would otherwise be unequivocally prohibited transactions by demonstrating their fairness and reasonableness." *Marshall v. Snyder*, 572 F.2d 894, 901 (2d Cir.1978).

569–79; *see also Pepper v. Litton,* 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939) (director of corporation stands in fiduciary relationship so that self-dealings with corporation must meet standards of good faith and inherent fairness from viewpoint of corporation); *Phelan v. Middle States Oil Corp.,* 220 F.2d 593, 600 (2d Cir.1955) (burden on beneficiary to prove conflict of interest, then burden shifts to trustee to show no loss to beneficiaries resulting from conflict), *cert. denied,* 349 U.S. 929, 75 S.Ct. 772, 99 L.Ed. 1260 (1955); *Gilliam v. Edwards,* 492 F.Supp. 1255, 1263–64 (D.N.J.1980) (applying *Tate* to ERISA context); *Blankenship v. Boyle,* 329 F.Supp. 1089, 1096 (D.D.C.1971) (pre-ERISA case in which *Pepper* was applied to fiduciaries of pension fund to require explanation why cash surpluses were accumulated contrary to duty to maximize trust income by prudent investment); *see generally* G. Bogert & G. Bogert, *The Law of Trusts & Trustees* § 543, at 40–42 (rev. 2d ed. Supp.1989).

▮▮▮ Improper motive encompasses something different from dishonesty or bad faith. *See* 3 *Scott on Trusts* § 187.5, at 46–47. Even the broadest delegation of discretion to a trustee or fiduciary is bounded by the limitation that the fiduciary cannot act from a motive other than the accomplishment of the purposes of the trust. *See, e.g., Funk v. Commissioner,* 185 F.2d 127, 130 (3d Cir.1950); *McDonald v. McDonald,* 92 Ala. 537, 9 So. 195, 196–97 (1890); *In re Estate of Smith,* 117 Cal. App.3d 511, 172 Cal.Rptr. 788, 794 (1981); *Mesler v. Holly,* 318 So.2d 530, 533 (Fla.

Dist.Ct.App.1975); *Lyter v. Vestal,* 355 Mo. 457, 196 S.W.2d 769, 773 (1946); *In re Alpert,* 129 A.D.2d 444, 514 N.Y.S.2d 16, 17, *appeal denied,* 70 N.Y.2d 603, 518 N.Y. S.2d 1026, 512 N.E.2d 552 (1987); *In re Bruches,* 67 A.D.2d 456, 415 N.Y.S.2d 664, 668 (1979). For example, where a trustee appears to be motivated by a desire to terminate the trust, the motive is improper and the trustee's discretionary determinations are scrutinized closely. *See Colket v. St. Louis Union Trust Co.,* 52 F.2d 390, 395–96 (8th Cir.1931), *cert. denied,* 285 U.S. 543, 52 S.Ct. 393, 76 L.Ed. 935 (1932).[11] ERISA's standard of loyalty constitutes statutory recognition of the bar on improper motivation. *See Central States,* 472 U.S. at 571 n. 12, 105 S.Ct. at 2840 n. 12. We have found improper motive in ERISA cases where fiduciaries or trustees failed to act in the sole interests of the beneficiaries by acting to advance the interests of the sponsoring union, *Deak v. Masters, Mates & Pilots Pension Plan,* 821 F.2d 572, 579–81 (11th Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), or by acting to advance their personal interests, *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1261 (5th Cir.1980).

▮▮▮ In accordance with the foregoing common law principles, we hold that when a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest. That is, a wrong but apparently reasonable interpretation[12]

---

**11.** The *Colket* opinion is interesting for its definition of an arbitrary decision. After acknowledging that determinations of the trustee are final unless the action is arbitrary, the court held:

> This limitation is merely one requiring good faith in the exercise of such power. Good faith requires an honest effort to ascertain the facts upon which its exercise must rest and an honest determination from such ascertained facts.... [I]f [the fiduciary] knew of matters concerning which honesty would require investigation, and failed to act, or if it knew of matters which would honestly compel a given determination and it announced to the contrary, it cannot, in law, be regarded as having

exercised good faith, and its action would be arbitrary.

52 F.2d at 391. Thus, an improper motive sufficient to set aside a fiduciary's decision may be inferred from the fiduciary's failure to investigate or to interpret honestly evidence that greatly preponderates in one direction.

**12.** It is fundamental that the fiduciary's interpretation first must be "wrong" from the perspective of de novo review before a reviewing court is concerned with the self-interest of the fiduciary. *See, e.g., Denton v. First Nat'l Bank of Waco,* 765 F.2d 1295, 1304 (5th Cir.1985) (first step in application of arbitrary and capricious standard is determining legally correct interpre-

is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries. This rule, we note, is an extension of the settled federal common law rule developed under the Labor Management Relations Act and subsequently applied in another context under ERISA. *See, e.g., Marshall v. Snyder,* 572 F.2d 894, 900–01 (2d Cir.1978); *Nedd v. United Mine Workers,* 556 F.2d 190, 210–11 (3d Cir.1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978); *Kaszuk v. Bakery & Confectionery Union,* 638 F.Supp. 365, 373 (N.D.Ill.1985); *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 636 (W.D.Wis.1979).

We have engaged in burden shifting of this type for similar reasons in ERISA suits. In *Fine v. Semet,* 699 F.2d 1091 (11th Cir.1983), the plan committed benefits determinations to the sole discretion of the trustees. We found that "after [the beneficiary] met his initial burden of offering evidence of facially inconsistent treatment, the burden shifted to the trustees to show why they acted as they did." *Id.* at 1095. We focused on the articulated reasons given by the trustees and, given the absence of any argument or indicia of conflicting interests or improper motives [13], we noted that "[t]he reasons need not be compelling, only sufficient to take them out of the arbitrary mold." *Id.* The trustees stated they were concerned with the impact of the beneficiary's request on the financial status of the fund generally and other beneficiaries specifically. We accepted their rationale as a judgment on their part designed to implement the statutory "duty [imposed] on fiduciaries to act solely in the interest of plan participants and beneficiaries." *Id.*

In *Deak v. Masters, Mates & Pilots Pension Plan,* 821 F.2d 572 (11th Cir.1987),

cert. *denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), we expressly reconciled this kind of burden shifting with the arbitrary and capricious standard in the context of improperly motivated trustees. The district court had found that the trustees of the plan amended it for the primary benefit of the sponsoring union and not for the plan beneficiaries. *Id.* at 576. On the heels of this finding, the district court rejected other apparently reasonable justifications for the plan amendment because they " '[did] not withstand the careful scrutiny with which they must be analyzed.' " *Id.* at 577 (quoting district court slip opinion). On appeal we found no inconsistency between the terminology of the district court and the traditional deference involved in the application of the arbitrary and capricious standard. *Id.* Indeed, we went further and laid the burden at the feet of conflicted fiduciaries to demonstrate their loyalty to the plan. We cautioned,

> We do not hold, however, that in all circumstances a provision similar to, or even identical with, Amendment 46 would violate ERISA. If the Trustees of a plan demonstrate that a provision is rationally related to the financial integrity of the Plan and is adopted absent from or insulated from any conflict of interest, consistent with their fiduciary duties, ERISA's protections of the participants and beneficiaries could be satisfied.

*Id.* at 581.

The burden of demonstrating the reasons for a challenged plan interpretation will, by and large, draw a distinction between plans that are truly trusts and plans that are based solely on contracts or policies for insurance. Decisions on behalf of a plan in the form of a trust lend themselves less readily to the accusation of conflicting interests and are more easily justified.

That plan administrators' decisions have had a favorable impact on the balance sheet of the trust itself, however, suggests no "conflict of interest." Fiduciar-

---

tation of disputed plan provision), *cited with approval in Jett,* 890 F.2d at 1139.

**13.** The district court ruled out the existence of either prohibited self-dealing or improper mo-

tives. *See Fine v. Semet,* 514 F.Supp. 34, 43–44 (S.D.Fla.1981), *aff'd,* 699 F.2d 1091 (11th Cir. 1983).

ies are obligated to act not only in the best interests of beneficiaries, but with due regard for the preservation of trust assets. Adverse benefits determinations may well have saved considerable sums, but that may simply reflect that the trustees, bearing in mind the interests of *all* participants and beneficiaries, 29 U.S.C. § 1104(a)(1), made a considered decision to preserve the corpus of the trust, rather than grant a doubtful claim. *De Nobel*, 885 F.2d at 1191 (emphasis in original). The *Fine* case illustrates this principle. Decisions made by the issuing company on behalf of a plan based on a contract of insurance, by contrast, inherently implicate the hobgoblin of self-interest. Adverse benefits determinations save considerable sums that are returned to the fiduciary's corporate coffers. The presumption that the fiduciary is acting for the future stability of the fund cannot be entertained.

Of course, the facts may bear out an insurance company's assertion that its interpretation of its policy is calculated to maximize the benefits available to plan participants and beneficiaries at a cost that the plan sponsor can afford (or will pay). *Cf. Griffis*, 723 F.2d at 825 ("Attempts to prevent unanticipated costs that may limit the resources of an employee benefits plan are among the proper concerns of a plan's administrator."). If this is a reasonable proposition, it would satisfy the fiduciary's burden to purge the taint of self-interest. The focus moves then to the familiar ways to test the fiduciary's decision against the arbitrary and capricious standard:[14] "(1) uniformity of construction; [and] (2) 'fair reading' and reasonableness of that reading...." *Anderson*, 759 F.2d at 1522. The internal consistency of a plan under the fiduciary's interpretation also has relevance. *Id.* These factors should be viewed contextually, in relation to the proffered rationale for the interpretation cho-

sen by the fiduciary. *See* Restatement (Second) of Trusts § 187, Comment *d* (fourth factor to consider in evaluating abuse of discretion is existence and definiteness of external standard by which reasonableness of fiduciary's conduct may be measured).[15]

We emphasize the central theme of our exposition: well-established common-law principles of trusts teach that a fiduciary operating under a conflict of interest may be entitled to review by the arbitrary and capricious standard for its discretionary decisions as provided in the ERISA plan documents, but the degree of deference actually exercised in application of the standard will be significantly diminished. A court should not exercise de novo review, but the area of discretion to which deference is paid must be confined narrowly to decisions for which a conflicted fiduciary can demonstrate that it is operating exclusively in the interests of the plan participants and beneficiaries. Even a conflicted fiduciary should receive deference when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interests of the participants and beneficiaries. The fiduciary, however, should bear the burden of dispelling the notion that its conflict of interest has tainted its judgment. If the fiduciary carries this burden, the party challenging its action may still succeed if the action is arbitrary and capricious by other measures. This second level of evaluation is assisted somewhat by the narrowing of the justifications which the fiduciary may properly assert in defense of its actions.

## APPLICATION

 We turn to the application of the principles for review of Blue Cross' denial of Brown's claim for medical benefits. The

---

**14.** This quotation omits the factor of "unanticipated costs" because that matter is considered before the focus shifts to the two mentioned factors.

**15.** We previously have applied the *Restatement*'s fourth factor without so stating. In

*Helms v. Monsanto Co.*, 728 F.2d 1416, 1420–22 (11th Cir.1984), we used, as external standards to measure a fiduciary's plan interpretation of a disability provision, insurance policies with similar provisions and cases construing the Social Security disability provisions.

district court, working from a highly deferential application of the arbitrary and capricious standard, concluded:

> After consideration of the statements of facts submitted by each party, the court finds that material issues are not in dispute. The medical plan expressly provides for preadmission certification unless the admission constitutes an emergency or is related to maternity care. Further, there is no dispute that plaintiff failed to acquire preadmission certification on both hospital admissions. The court notes that there is some evidence that the second admission might be treated as a continuation of the first admission which did satisfy the emergency condition for coverage. Further, the court notes that there is some evidence that the second admission was also an emergency, hence eligible for coverage under the terms of the Plan.

> The court finds, however, that a rational basis exists for Blue Cross' decision not to extend coverage to the second admission. There is substantial evidence to support the conclusion of the health care provider that there were two separate admissions and that the second admission did not constitute an emergency admission. Therefore, Blue Cross' denial of plaintiff's claim for benefits cannot be said to be arbitrary and capricious.

We cannot affirm this analysis, however, because the conflict of interest suffered by Blue Cross in this case demands closer scrutiny. Consistent with our test for the decisions of a fiduciary suffering from a conflict of interest we would require at this stage a demonstration that Blue Cross adopted its plan interpretations exclusively for the benefit of the plan participants and beneficiaries. The posture of the case does not permit our progress to the next stage. In the present case, then, we look ahead to see if Brown could prevail, should Blue Cross fail on remand to justify its actions. We conduct this inquiry to ascertain whether an alternative basis for affirming the district court is present. Our review of the record on appeal suggests that Brown may prevail if the arbitrary and capricious standard is applied with consideration for Blue Cross' conflict of interest. We conclude remand is necessary to resolve this case.

Our analysis begins with two observations regarding the circumstances of Blue Cross' final benefit denial determination. First, as we noted at the outset, Blue Cross initially denied coverage for both periods of hospitalization. Brown obtained payment of the first period only after pursuing review of that denial. This change in position highlights Blue Cross' conflict of interest and calls into question its motives in benefits determinations. The reversal of its denial of the claim for the first period of hospitalization was based on nothing more than the medical records from that time. Those records should have been part of a good faith determination at the outset. That Blue Cross would reach opposing conclusions on the basis of the same evidence seriously challenges the assumptions upon which deference is accorded to Blue Cross' interpretation of the plan. *Cf. Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan*, 874 F.2d 496, 500 (8th Cir. 1989) (no deference due to fiduciary's decision to deny benefits under second category of total disability where fiduciary previously found disability under other category based on same evidence and identical definition).

We further observe that Blue Cross does not contest that the surgery performed on Brown was medically necessary and that it would have been covered if preadmission certification had been obtained. Blue Cross, then, has interpreted the plan to work a forfeiture of benefits by Brown. As a general principle, employee benefit plans should not be interpreted in such a way as to produce a forfeiture. *See Helms v. Monsanto Co.*, 728 F.2d 1416, 1420 (11th Cir.1984) ("Congress wanted to assure those who participate in the plans actually receive the benefits they are entitled to and do not lose these as a result of unduly restrictive provisions or lack of sufficient funds."); *Bonar v. Barnett Bank*, 488 F.Supp. 365, 369 (M.D.Fla.1980) (employer unilaterally establishes plan to encourage continued employment through promise of benefits, so terms should be construed in

favor of employees to whom promises are made); *Russell v. Princeton Labs., Inc.,* 50 N.J. 30, 231 A.2d 800, 803 (1967) (pre-ERISA employee benefit plan case). Because Blue Cross profits from such forfeitures, we should demand strong justification for an interpretation which produces this result.

■ In light of these observations, we test Blue Cross' decision by the arbitrary and capricious standard as appropriate in an instance for which conflicting interests are involved. Consistent with the methodology recommended by *Denton v. First National Bank of Waco,* 765 F.2d 1295, 1304 (5th Cir.1985), our first step in the application of arbitrary and capricious standard is determining the legally correct interpretation of the disputed plan provision. That is, we must determine if Brown has proposed a sound interpretation of the plan, one that can rival the fiduciary's interpretation. Thereafter we evaluate whether the fiduciary was arbitrary and capricious in adopting a different interpretation. *Id.*

Brown stands by two theories in support of his claim for benefits. The first theory posits that the second period of hospitalization is a continuation of the first. The district court concluded, as quoted above, that some evidence supported this theory. We agree. One indicator is Blue Cross' initial decision to lump the two periods together. Another reason to treat the periods of hospitalization together is the treating physician's opinion that the two periods were a common admission. Materials submitted by Brown in opposition to the summary judgment motion suggest that he persuaded his doctors to allow him to go home for a few days in order to reduce his medical bills and to allow him to tend to matters at home.

The plan does not purport to define what constitutes a single admission for the purpose of an emergency.[16] Blue Cross exercised its general discretion in deciding that the admissions were separate. As noted previously, though, Blue Cross' position seems contrary to its consideration of the two periods of hospitalization together when the claim was initially denied in full.

Moreover, the discrete division of the two admissions gives rise to inconsistencies with other provisions of the plan. For instance, the plan limits the number of days for which major medical coverage is available during a single confinement to a hospital. *See* Contract Plan, § V(A)(1). It states, "Successive admissions to a hospital or hospitals shall be deemed to result in a 'single confinement' if discharge from and readmission to a hospital or hospitals occur within a 90 day period." *Id.* Blue Cross argues that this language is expressly limited to the definition for a confinement, not an admission. The distinction is illusory. We look to provisions such as Section V(A)(1) not to define conclusively other provisions. Rather, we seek objective guidance by which to measure the exercise of Blue Cross' discretion. The ninety-day standard indicates recognition of the continuing nature of many afflictions. Blue Cross may be able to explain why it is justified in treating Brown's readmission only three days after discharge differently from the conclusive presumption imposed in the plan for the limitation of benefits payable, but the need for that explanation bars us from affirming the grant of summary judgment.

■ The demand for preadmission certification for a second admission, when the second admission follows so quickly on the heels of a discharge from the hospital, also raises questions relative to the procedures

---

**16.** The plan does provide a definition of emergency. *See* Contract Plan, § I(30) ("Medical Emergency"). An issue raised on appeal is whether Blue Cross has additional discretion because the definition adds "in the Company's judgment" to the definition of emergency. We are of the opinion that the issue is cut short by the omission of that phrase from the summary plan booklet. While Blue Cross argues that its

absence is inconsequential because the summary refers participants to the full Contract Plan and states that the latter controls, we rejected this argument out of hand in *McKnight v. Southern Life & Health Insurance Co.,* 758 F.2d 1566, 1570 (11th Cir.1985), and Blue Cross has provided no basis for distinction to avoid the same fate here.

for preadmission certification.[17] The plan describes the process as one in which the patient and physician fill out a written form, deliver it to Blue Cross and await written notice by mail from the insurance company. *See* Contract Plan, § V(A)(5). Should a patient who is discharged on a Saturday with instructions from his doctor to return on the following Wednesday expect that the planned surgery must be subjected to what appears to be a time-consuming process of preadmission approval? Of course, the subjective expectations of plan participants and beneficiaries are not the measure of a reasonable plan interpretation. *See Hoover,* 855 F.2d at 1542. But we juxtapose the definitions of "emergency" and the procedure for preadmission certification and find that a reasonable person could conclude that the short period of discharge from the hospital did not interrupt an emergency admission for which certification was not necessary.[18] Thus, Blue Cross' discretion under the plan is bounded by an external standard that assists in the interpretation of an emergency. An interpretation to the contrary requires solid justification from Blue Cross and, in the absence of such justification, we cannot affirm the grant of summary judgment.

Brown's second theory describes his second admission to the hospital as an independent emergency. From a purely medical perspective we find no fault in Blue Cross' rejection of this theory. Brown's doctor wrote a letter setting forth symptoms indicative of an emergency. Blue Cross' expert compared the description in the letter with the medical records prepared at the time of Brown's admission.

17. At oral argument appellant's counsel represented that oral approval of preadmission certification is commonplace. This variation from the plan document is not of record. Assuming for present purposes that oral approvals are used frequently, we do not find in this practice a basis to vary our analysis. Blue Cross must adopt interpretations of plan provisions which are consistent with the *written* terms of the plan. *Cf. Nachwalter v. Christie,* 805 F.2d 956 (11th Cir.1986); *Thomas v. Gulf Health Plan, Inc.,* 688 F.Supp. 590, 595 (S.D.Ala.1988). Blue Cross may not justify a plan interpretation on its consistency with actual practice when the interpretation is inconsistent with the written terms concerning the practice. *Cf. Kane v. Aetna Life Insurance,* 893 F.2d 1283, 1285–86 (11th Cir.1990) (federal common law of equitable estoppel applies to oral interpretations of plan, but oral representations may not amend or modify written terms of plan).

The matter of oral approval leads to an additional point raised by appellant. He asserts that the record shows that precertification was indeed obtained for the second admission. Several pieces of documentation available to Blue Cross at the time of its decision suggest his assertion could be true. First, a notation on Brown's hospital record for admission on September 29th lists Blue Cross' telephone number and "Pre–Cert with Judy." Second, a Blue Cross record of inquiry shows communication between Brown's hospital and Blue Cross on September 24th. This record mentions "PAC" and "hospital verification complete." Last, Brown's letter to Blue Cross dated March 2, 1988, states, in passing: "By the way Dr. Lupin informed me before any admittance to the Hospital they call Blue Cross, now I understand why I had to waite [sic] 2 hours before I was admitted the second time." One inference that might be culled from these documents is that a call was made and preadmission certification was obtained. Another inference is that Blue Cross acted arbitrarily and capriciously in denying Brown's claim if it did not further pursue the possibility that oral certification was validly given.

We cannot, however, grant relief to Brown on the basis of a question of material fact concerning whether preadmission certification was obtained. His counsel admitted at oral argument that he did not present any argument to the district court on the matter of having obtained PAC. We will not disturb the district court's grant of summary judgment on the basis of an argument not addressed to that forum. *See Denis v. Liberty Mutual Ins. Co.,* 791 F.2d 846, 848–49 (11th Cir.1986).

Since we reverse and remand on other grounds, we do not perceive any bar to the assertion of this theory on remand since the relevant documentation was before the district court. As the exchange of oral argument revealed, though, additional discovery is undoubtedly needed in order for Brown to prevail on this theory.

18. Brown's correspondence with Blue Cross details his perspective on his admission, discharge, and readmission. Brown reports that prior to discharge he had been taken off of intravenous antibiotics and placed on an oral schedule of the same medication. His physician hesitated to discharge him because failure to follow a precise schedule in taking the medication could reignite the symptoms that led to Brown's admission. If Brown can prove these allegations at trial, then there appears a solid factual basis for his theory of treating the two periods of hospitalization as one.

The two sources conflicted. Blue Cross prudently solicited additional information from the physician-author of the letter. When no reply was forthcoming, Blue Cross preferred the contemporaneously prepared evidence over the letter written much after the fact. Even a self-interested fiduciary is entitled to choose an apparently more reliable source of information when sources conflict.[19]

From a plan interpretation standpoint, however, we would hold Blue Cross to task for adopting a construction that places a beneficiary in an untenable position. Assuming Blue Cross is correct in treating the second admission as distinct, then the beneficiary must seek preadmission certification. Those procedures, however, do not lend themselves to accomplishment in the few days prior to readmission. Blue Cross, then, must expect the beneficiary to dispute his doctor's judgment, following a five-day hospitalization for an emergency, that surgery should take place so soon. Instead, the beneficiary is expected to seek a delay until preadmission certification is obtained. Such a rule seems dangerous if not wholly absurd. Perhaps Blue Cross can explain its position to the district court; its opportunity is presented on remand.

## CONCLUSION

The district court correctly noted that some evidence supports Brown's arguments favoring coverage. This evidence must be evaluated within the framework of the arbitrary and capricious standard, as it applies when the circumstances of the fiduciary's discretionary action invoke well-established common-law principles suggesting the potential abuse of discretion in the administration of a trust. In accordance with our foregoing analysis, we REVERSE the grant of summary judgment by the

district court and REMAND for proceedings not inconsistent with this opinion.

---

19. We stress the request for further information as an indicator of Blue Cross' good faith in resolving this narrow question. The fact that Blue Cross showed good faith in one aspect of its consideration of Brown's claim is not enough to impute good motives to their entire consideration of his claim. The self-interest under which Blue Cross operates may not manifest itself in conscious favoritism of its interests over Brown's. Consequently, Blue Cross may act in good faith in one respect and subconsciously advance its interests in another respect. In this case, for example, there is little indication that Blue Cross gave serious consideration to Brown's adamant advocacy of the single admission theory.