**Daphene D. CALHOUN, Plaintiff,**

v.

**COMPLETE HEALTH CARE, INC., Defendant.**

**Civ. A. No. CV–94–0556B–M.**

United States District Court,
S.D. Alabama,
Southern Division.

Aug. 12, 1994.

James H. Crosby, Jack B. Hood, Rocky W. Eaton, Crosby, Saad, Beebe & Crump, P.C., Mobile, AL, for plaintiff.

Carroll H. Sullivan, Clark, Scott & Sullivan, Mobile, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUTLER, Chief Judge.

On July 25, 1994, plaintiff Daphne D. Calhoun filed a complaint and motion for temporary restraining order and preliminary injunction against defendant Complete Health, Inc. seeking benefits due her under an employee welfare benefits plan administered by defendant. Specifically, plaintiff seeks preadmission certification for coverage by Complete Health for treatment of breast cancer

by high dose chemotherapy which includes a peripheral stem cell (blood) transplant ("HDC–PSCT").[1] Because of the urgency of plaintiff's need for treatment and the seriousness of the issues presented, the Court, by agreement of the parties, has expedited this action. Plaintiff has waived her request for a temporary restraining order, and the motion for preliminary injunction has been merged with the trial on the merits. The parties have submitted briefs, affidavits, depositions and documentary evidence to the Court for consideration in the resolution of this matter and have agreed the an evidentiary hearing is not necessary. After considering the evidence presented, the argument of counsel and the applicable law, the Court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff Daphne Calhoun is a member of an employee welfare benefit plan ("the Plan")[2] established and maintained for the purpose of providing beneficiaries with health care benefits through a health maintenance organization ("HMO"). The Plan is administered by defendant Complete Health, Inc. which also issued the health maintenance benefit contract which plaintiff claims provides the benefits she seeks.[3]

Plaintiff is a thirty-year-old woman who has been diagnosed with an aggressive form of breast cancer which has also infiltrated a number of lymph nodes. Plaintiff has received chemotherapy and has undergone a right modified radical mastectomy. Because her disease has not responded to traditional chemotherapy, plaintiff's oncologist, Dr. Michael Meshad, initially recommended that plaintiff undergo a more intensive treatment known as high dose chemotherapy with auto-logous bone marrow transplant ("HDC–ABMT"). Plaintiff's prognosis without this treatment is very poor.[4] Because treatment is not available locally, plaintiff was referred to the Cancer Center at Vanderbilt University. The treatment plan outlined by Dr. Steven Wolff of Vanderbilt would require that plaintiff undergo a procedure similar to that recommended by Dr. Meshad known as high dose chemotherapy which includes peripheral stem cell transplant ("HDC–PSCT").

High dose chemotherapy involves the administration of extremely high, potentially toxic, doses of chemotherapy in an effort to eradicate cancer cells. Unfortunately, the chemotherapy also kills healthy bone marrow which produces white blood cells to protect the body from infection. Thus, if high dose chemotherapy is administered without some additional treatment to regenerate bone marrow, the patient has little, if any, chance of surviving the treatment.

Autologous bone marrow transplant ("ABMT") and peripheral stem cell transplant ("PSCT") are two methods used to regenerate bone marrow. With ABMT prior to the administration of high dose chemotherapy healthy bone marrow is removed from the patient who is placed under general anesthesia while bone marrow is extracted by needle. Stem cells are removed from the bone marrow and frozen. The cells are then reintroduced into the body intravenously following chemotherapy for the purpose of causing the patient's bone marrow to regenerate.

The same result can be achieved through PSCT which involves a process similar to collecting blood. With PSCT the stem cells are harvested from the patient's blood which is removed by placing a catheter in the pa-

---

1. The complaint seeks coverage for high dose chemotherapy with autologous bone marrow transplant (HDC–ABMT). For reasons discussed *infra* at p. 1496, plaintiff initially believed that HDC–ABMT was the procedure she would be undergoing. Because of the similarity of these procedures, the Court refers to them interchangeably throughout this order.

2. This Plan was established by Sears, Roebuck and Co. for the benefit of its employees. Plaintiff's husband is a Sears employee.

3. The health maintenance contract is similar to a health insurance policy in that the Plan pays Complete Health a fixed premium in exchange for the delivery of medical services by approved providers.

4. Dr. Meshad estimates the chances of surviving more than five years without the recommended treatment at less than ten percent. With treatment the odds are increased to greater than fifty percent according to Dr. Meshad.

tient's neck. This process does not require general anesthesia. As with ABMT, the stem cells are reintroduced intravenously following chemotherapy.

Plaintiff sought preadmission certification from Complete Health for this treatment.[5] Defendant denied coverage on the ground that all transplants, except cornea and kidney, are excluded from coverage by the terms of the policy. Following the grievance procedure outlined in the Plan, plaintiff then filed a formal grievance with Complete Health which was denied by the company's Grievance Committee. Plaintiff then filed an appeal which was denied by the Complete Health Grievance Appeal Committee. Both the Grievance Committee and the Grievance Appeal Committee are composed of Complete Health employees, including medical personnel and marketing personnel.

The Certificate of Coverage issued by Complete Health to the Sears Plan contains the following relevant provisions:

### BASIC COVERED SERVICES

\* \* \* \* \* \*

**2. Hospital Services**

\* \* \*. \* \* \*

**a.** Inpatient Services.

\* \* \* \* \* \*

(14) chemotherapy;

. . . . . .

(16) administration of whole blood and blood derivatives . . .

\* \* \* \* \* \*

### LIMITATIONS

\* \* \* \* \* \*

**2. SPECIFIC LIMITATIONS ON CERTAIN SERVICES:**

\* \* \* \* \* \*

**d.** Transplants. Covered transplants are limited to cornea and kidney unless the Employer has subscribed to the Transplant Rider. The transplant benefit is

subject to a maximum allowable amount as set forth in the Schedule of Copayments. . . .

\* \* \* \* \* \*

### EXCLUSIONS

Like most other health plans, there are SOME SERVICES WE DO NOT COVER under our basic benefits. Some of these excluded items may be covered under one or more of our optional coverage which is available through riders. Services which are not covered include but are not limited to:

\* \* \* \* \* \*

**4. TREATMENTS AND SERVICES SPECIFICALLY EXCLUDED**

\* \* \* \* \* \*

**b.** Organ donor treatment or services where a Member serves as the organ donor but recipient is not a Member of Complete Health.

\* \* \* \* \* \*

### GRIEVANCE PROCEDURE

Complete Health has the discretion to determine all benefits under this Certificate and the Group Enrollment Agreement f which this Certificate is a part, to enforce the terms thereof and to resolve all questions regarding the interpretation and application of its terms.

Plaintiff has filed the instant action seeking a declaratory judgment that she is entitled to benefits under the Plan for hospital costs related to the treatment of her breast cancer with HDC–PSCT and for permanent injunctive relief enjoining defendant from denying the benefits she seeks.

### CONCLUSIONS OF LAW

Because plaintiff's health care is provided under an employee welfare benefit plan this case is governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*, commonly known as ERISA. The Supreme Court has held that ERISA plans

---

**5.** Initially, plaintiff sought coverage for HDC–ABMT based on Dr. Meshad's recommendation. Dr. Wolff, who formulated plaintiff's treatment plan at Vanderbilt, instead recommended HDC–PSCT.

are akin to trusts and, therefore, that courts must be guided to some extent by trust principles when reviewing the decisions of a Plan administrator or fiduciary. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110–11, 109 S.Ct. 948, 954–55, 103 L.Ed.2d 80 (1989).

In *Firestone* the Supreme Court held that when a Plan reserves to the Plan administrator "the discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the administrator's decision to deny benefits should be reviewed under the arbitrary and capricious standard. *Id.* at 114–15, 109 S.Ct. at 956–57. However, the Court went on to note that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Id.* at 115, 109 S.Ct. at 956–57 (quoting Restatement (Second) of Trusts § 187, Comment d (1959)).

In the case at hand the parties agree that the Plan gives the defendant the discretion to interpret Plan provisions and that the defendant suffers from a conflict of interest. In *Brown v. Blue & Cross Blue Shield of Alabama*, 898 F.2d 1556 (11th Cir.1990), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991), the Eleventh Circuit set forth the framework to use in applying the principles set forth in *Firestone* "where an insurance company serves as the decision-making fiduciary for benefits that are paid out of the insurance company's assets."[6] *Id.* at 1561. The first step is to determine "the legally correct interpretation of the disputed plan provision." *Id.* at 1570. If the administrator's interpretation is correct, then his decision must be upheld. *Id.* at 1566 n. 12.

■ If the administrator's interpretation is wrong, the Court must determine whether the decision was arbitrary and capricious. *Id.* at 1563. However, the arbitrary and capricious standard must be applied with

consideration for the administrator's inherent conflict of interest. *Id.* Therefore "[t]he degree of deference exercised in review of a fiduciary's decision ranges from slight to great, depending upon the dynamics of the decisionmaking process." *Id.* at 1564.

■ In applying the principles set forth above to the facts of this case, the Court finds that Complete Health's decision to deny plaintiff's request for benefits was arbitrary and capricious. First, Complete Health's decision to deny benefits was wrong. The defendant contends that denial of coverage was correct based on the policy's transplant limitation. Plaintiff argues that the policy's provision covering chemotherapy and administration of blood and blood derivatives provide coverage for the treatment she seeks.[7] Alternatively, plaintiff contends that the policy is ambiguous because the coverage provisions she relies on are in direct conflict with the transplant limitation upon which defendant relies. Therefore, plaintiff argues that this ambiguity should be construed in her favor under the doctrine of *contra proferentem*.

The Court finds that the policy is ambiguous with respect to coverage for HDC–PSCT. The primary procedure involved in HDC–PSCT treatment is chemotherapy which is clearly covered under the policy. The PSCT procedure is the support which makes high dose chemotherapy possible and, therefore, is part and parcel of the chemotherapy treatment. Furthermore, PSCT involves the removal and eventual reintroduction of stem cells which the experts agree are blood derivatives, the administration of which is also covered under the policy.

Since the bone marrow support procedures, ABMT and PSCT, are both referred to in the medical literature and by some of the experts as transplants, the chemotherapy and blood derivative provisions appear to be in conflict with the transplant limitation. Defendant argues that by limiting trans-

---

6. Although Complete Health is an HMO rather than an insurance company, its conflict is no different from that of an insurance company. The Plan at issue has contracted to pay Complete Health a fixed rate in exchange for medical care.

7. In keeping with her argument that the policy unambiguously covers her treatment, plaintiff also argues that the procedure by which stem cells are extracted and then replaced is not a transplant but a transfusion. The Court finds no need to resolve this issue since the policy is ambiguous even if the procedure is a transplant.

plants to kidney and cornea this provision limits the coverage to only those parts of high dose chemotherapy which do not include the ABMT or PSCT. Of course, this interpretation completely eviscerates the purpose of the high dose chemotherapy, leaving a policy, as defendant would argue it should read: "We will pay for high dose chemotherapy, but you cannot have the PSCT, thus exposing you to the likelihood that you won't survive the procedure." This is a completely senseless interpretation from either the plaintiff or the defendant's perspective.

Furthermore, the transplant limitation is not nearly so clear as defendant asserts. Kidney and cornea transplants are organ transplants, they require a third-party donor[8] and they are the primary treatment for the illness involved. In contrast, HDC–PSCT involves only the patient's own blood and, more importantly, HDC–PSCT is only supportive, albeit vital, to the chemotherapy treatment.

Language contained in the policy's "Exclusions" section further demonstrates the fallacy of the defendant's argument that HDC–PSCT is excluded. It provides, in part:

**A. Treatment and Services Specifically Excluded**

. . . . .

   **b.** Organ donor treatment or services where a Member serves as the organ donor but recipient is not a Member of Complete Health.

Here again is language which further seems to define the types of transplants which are excluded, and limits the exclusion to third party donor transplants. Whether defendant is correct or not that medical literature and experts define HDC–PSCT and HDC–ABMT as transplants, this does not alter the fact that their policy exclusion language seems only to address third party donor transplants.

In addition, Plaintiff is correct in further arguing that the above-quoted language serves the defendant or purpose where, as here, the recipient *is* a member of Complete Health. Since plaintiff is a member and is simply giving herself her own blood derivative protected from the devastating effects of HDC, the exclusion cannot be reasonably interpreted as denying her coverage.

Because the policy appears to provide coverage under the chemotherapy and blood derivatives provisions and does not clearly exclude coverage elsewhere, it must be interpreted in favor of the plaintiff. Such an interpretation is mandated by the principle of *contra proferentem* which has recently been adopted by the Eleventh Circuit in the ERISA context. *See Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547, 1551 (11th Cir.1994) (application of rule requires construction of ambiguities against insurer).

In *Doe v. Group Hospitalization & Medical Services*, 3 F.3d 80 (4th Cir.1993), the Fourth Circuit construed similar plan provisions[9] in favor of the insured:

   The bone marrow transplant, while necessary to avoid a disastrous side effect, is not the procedure designed to treat the cancer. The first question to be asked, therefore, is whether the cancer treating procedure is covered by the contract, and, as already noted, we have found it is. While Blue Cross is well within its rights to exclude from coverage the ancillary bone marrow transplant procedure, the exclusion should not, in the absence of clear language, be construed to withdraw cover-

---

8. Included in the transplant limitation section is the following language which tends to lead to the conclusion that this limitation deals exclusively with donor transplants:

   Authorized medical hospital expenses of a recipient and a donor (or prospective donor) are covered only when the recipient is a Member ... If the donor is not a Member, Covered Services for the donor are limited to those services and supplies directly related to the transplant procedure itself ... If the recipient is not a Member, no donor expenses are covered. Living donor transportation costs are not covered even when the donor is a Member. Cadaver organ transportation costs are covered even when the donor is not a Member.

9. The exclusions in that case were even less ambiguous than the ones at issue. Doe's policy specifically included a list of illnesses for which ABMT was covered. Doe's illness was not one of those listed.

age explicitly granted elsewhere in the contract.

*Id.* at 88.

In advancing its interpretation of the contract, defendant has relied heavily on a case decided recently in the Northern District of Alabama, *Complete Health, Inc. v. Rasberry,* —— F.Supp. ——, No. 92–B–2194–S (March 21, 1994), which involved a contract with a transplant exclusion similar to the one at issue here. In that case the plaintiff sought coverage for an allogenic (meaning from a third party) bone marrow transplant. Judge Blackburn ruled that this type of transplant was not covered because it was not listed in the transplant provision which set out covered transplants and excluded all others. *Rasberry* is distinguishable from the case at hand in two important respects. First, there it does not appear that the plaintiff argued that the policy was ambiguous because the procedure was otherwise covered under the chemotherapy or blood derivative provisions. Second, the plaintiff in that case sought an allogenic bone marrow transplant which requires a third party donor. Thus, policy language referring to third party transplants would not create ambiguity.

Having found that the defendant's decision to deny coverage was wrong, the Court must next determine the amount of deference to be given to the defendant in deciding whether the decision was nonetheless reasonable. The *Brown* court set forth the following guidelines for determining the degree of deference to give a conflicted administrator:

> [W]hen a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest. **That is, a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.**

*Id.* at 1566–67 (footnote omitted).

■ Unquestionably, the defendant's decision advanced its own financial interests over the interests of the plaintiff. The defendant saved itself money, whether by increasing profits or avoiding losses, by refusing to cover plaintiff's claim.[10] Therefore, if defendant's actions are to be evaluated under the most deferential standard of review, the burden is on the defendant to purge the taint of self-interest by proving that its interpretation was in the best interest of all participants and beneficiaries. In *Brown* the court noted that one way an insurance company could purge the taint of self-interest would be proving "that its interpretation of its policy is calculated to maximize the benefits available to the plan participants and beneficiaries at a cost that the plan sponsor can afford (or will pay)." *Id.* at 1568.

■ Defendant asserts that the denial of benefits to plaintiff benefitted the class of beneficiaries as a whole in several ways. First, defendant argues that its interpretation is in the best interest of all beneficiaries because it gave them the services for which Sears contracted. According to defendant, the premiums charged were calculated on the assumption that there was no coverage for bone marrow transplants because Sears had specifically turned down Complete Health's transplant rider.[11] Also, defendant points out that the Plan participants had a choice between its policy and the Sears Medical Indemnity Plan which does cover ABMTs.

Defendant's argument misses the point. First, its interpretation minimizes, rather than maximizes, benefits to the Plan participants and beneficiaries based on the terms of the Plan. There is no evidence that the participants knew that Sears had turned down the transplant rider and, even if they had, it could not be in their best interest to use that decision as a basis to limit benefits under an ambiguous policy. Likewise, limit-

---

10. The cost for this treatment is estimated to be anywhere from $80,000 to $228,000.

11. While the transplant rider did cover ABMT for certain illnesses, breast cancer was not one of them.

ing benefits because the defendant failed to calculate the cost of ABMTs does not benefit Plan participants whose premiums have already been fixed.[12] Finally, the fact that Sears employees had a choice between two policies, both of which appeared to provide coverage, does not support defendant's assertion that their interpretation simply gave Plan participants what they bargained for.

Next, defendant attempts to rid itself of the taint of self-interest by pointing out that the cost of plaintiff's procedure was not discussed at the Grievance Committee meeting. Whether or not cost was discussed is irrelevant since the denial of a claim obviously saves the defendant money.

■ As further evidence of its lack of self-interest, defendant points to its contribution of $30,000 to a fund established to assist plaintiff with her medical expenses. The Court declines to consider this factor. If the payment of the portion of a beneficiaries expenses were all that were necessary to prove a lack of self-interest, conflicted plan administrators could, in essence, buy a more favorable standard of review, especially in close cases, by simply "donating" a portion of the beneficiary's claim.

Finally, defendant contends that the consistency of its position that ABMTs are not covered should be considered as evidence of its lack of self-interest. The fallacy in this argument is obvious—a fiduciary can consistently act in its own best interest.

Having rejected all of the reasons proffered by defendant to purge itself of the taint of self-interest, the Court finds that the deference due defendant's interpretation is minimal. Considering the defendant's decision in light of this less deferential standard of review, the Court finds defendant's interpretation to be arbitrary and capricious for two reasons.

First, as discussed above, the policy at issue provides coverage for the treatment plaintiff seeks. Defendant should not be allowed to deny coverage based on plan limitations which do not clearly and explicitly exclude that treatment. *See Doe*, 3 F.3d at 89.

Second, the manner in which the Grievance Committee and Grievance Appeals Committee arrived at their decisions supports the conclusion that the defendant's actions were arbitrary and capricious. The only policy provision considered was that provision which excluded transplants. It appears that the sole issue the committees considered was whether or not HDC–ABMT was a transplant and that no consideration was given to the contracts's chemotherapy and blood derivative coverage.[13]

*Conclusion*

For the foregoing reasons, the Court finds in favor of the plaintiff. Accordingly, it is hereby **ORDERED** as follows:

(1) That plaintiff is entitled to recover benefits due to her under the terms of the Plan for past, present and future hospital costs for the prescribed treatment of her breast cancer with high dose chemotherapy supported by autologous bone marrow transplant or by peripheral stem cell transplant.

(2) That the defendant is permanently enjoined from denying plaintiff the health benefits she seeks under the Plan.

A final judgment will be entered by separate order. Motions for attorneys fees and court costs should be submitted in accordance with Local Rules 13 and 28.

**DONE.**

---

**12.** At oral argument, defendant argued that its interpretation would benefit participants by holding down future costs since coverage of ABMTs would require an increase in future premiums beyond what the employer would be willing to pay. There are two problems with this argument. First, there is no evidence in the record to support this assertion. Second, defendant can rewrite future policies to eliminate the ambiguity and explicitly exclude coverage for ABMTs.

**13.** *See* Aff. of Susan Patterson p. 16–17, Ex. 3. *See also* Aff. of Kim Benos p. 25.