Vildana SEJDIC, Plaintiff,

v.

GROUP LONG–TERM DISABILITY PLAN FOR EMPLOYEES OF HOMESIDE LENDING, INC., et. al., Defendants.

No. 3:03–CV–820–J–20–MCR.

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 29, 2004.

Thomas M. Farrell, IV, Farrell & Gasparo, P.A., Jacksonville, FL, for Plaintiff.

Ralph C. Losey, Alan Harrison Brents, Katz, Kutter, Alderman & Bryant, P.A., Orlando, FL, for Defendants.

### ORDER

SCHLESINGER, District Judge.

This cause comes before the Court on Defendant Hartford Life Insurance Company's Motion for Summary Judgment (Doc. No. 20, filed October 1, 2004) and its accompanying Memorandum of Law (Doc. No. 19, filed October 1, 2004). Plaintiff filed a Memorandum in Opposition on October 15, 2004 (Doc. No. 23). Also before the Court are Plaintiff's Motion for Summary Judgment (Doc. No. 22, filed October 1, 2004) and Defendant Hartford's Memorandum in Opposition to the Motion (Doc. No. 24, filed October 18, 2004). After careful consideration of the arguments and detailed review of the Administrative Record, the Court concludes that Defendant Hartford's Motion for Summary Judgment (Doc. No. 20) should be granted, and that Plaintiff's Motion for Summary Judgment (Doc. No. 22) should be denied.

Plaintiff brought this action under the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. 1001 et. seq, claiming that she had been wrongly denied long term disability benefits under a Group Long Term Plan of her former employer, Homeside Lending ("Homeside"). Hartford Life Insurance Company ("Hartford"). the Administrator of the Group Plan and the only remaining Defendant, contends that Plaintiff was properly denied long term disability benefits because she is not permanently disabled, but rather capable of light sedentary activity.

### I. Factual Background

Plaintiff was formerly employed by Homeside Lending, Inc. as a Loan Control Associate. As an employee, she was eligible for disability benefits under Homeside's Group Plan ("Plan"). An employee is disabled under the Plan where "during the Elimination Period and for the next 24 months you are prevented by: 1) accidental bodily injury; 2) sickness; 3) Mental Illness; 4) Substance Abuse; or 5) pregnancy, from performing one or more of the Essential Duties of Your Occupation...After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation." (Plan at 30). An Essential Duty is one that: 1) is substantial, not incidental; 2) is fundamental or inherent to the occupation; and 3) can not be reasonably omitted or changed." (Plan 30). Hartford serves as Administrator of the Plan and thus, makes all decisions regarding claims and appeals for benefits under the Plan. (Plan at 30).

On July 19, 2001 Plaintiff terminated her employment with Homeside because of serious back pain.[1] (A.R. at 83). Hartford

---

1. It is noted that Plaintiff has a long and well documented history of back pain, including 2 back surgeries in 1993 and 1995 in Germany.

authorized payment of long term disability benefits from that date until September 30, 2002 when it terminated the benefits finding that Plaintiff was not disabled, but rather was capable of performing sedentary work for eight hours per day. (A.R. at 79).

Hartford's decision to terminate Plaintiff's long term disability benefits was based on several different sources. The source Defendant relies on most strongly to defend its decision is the Functional Capacity Examination (FCE) Plaintiff took on August 27, 2002. (A.R. at 205).[2] The Examiner concluded that Plaintiff "is currently functioning in LIGHT physical demand category as defined by the U.S. Dept. Of Labor. Based on her demonstrated lifts, the client demonstrated the ability to perform sedentary work for an 8 hour day with the physical abilities noted." (A.R. at 205). The report also noted that Plaintiff "demonstrated tolerance of sitting and standing on a constant basis and walking, typing, grasping, sustained forward reaching, kneeling, stair climbing, stooping, trunk twisting, push/pulling and fine motor manipulation on an occasional basis." (A.R. at 205). The Examiner did, however, record that "client called on 8/28/02 with complaints of increased pain . . . stating that she could not walk and would not tolerate the MSE again. She stated that she had called her doctor, but that she could not be seen that day and that she was thinking of going to the emergency room." (A.R. at 204–05). Moreover, the Examiner reported numerous times in which Plaintiff self-terminated an exercise due to complaints of increased pain. (A.R. at 208–09, 211). Finally, the Examiner recorded that the client gave inconsistent efforts for many exercises, al-though recognizing that often the Plaintiff self-terminated exercises due to pain and demonstrated responses consistent with pain. (A.R. at 209–11).

Defendants also rely heavily on a questionnaire Plaintiff's treating physician, Dr. Florente, signed after reading the August 27, 2002 FCE. When asked if he agreed with the outcome of the FCE and the recommendation that Plaintiff is capable of returning to sedentary full time work, Dr. Florente wrote the word "yes." (A.R. at 200). Based on these findings that Plaintiff was capable of returning to work at the sedentary level required of a Loan Clerk, Hartford terminated Plaintiff's long term disability benefits.

Plaintiff appealed this decision submitting a letter from Dr. Florente and a letter from Dr. Akua Owusu of the Life Counseling Center in Jacksonville, Florida. Dr. Florente's letter, written "to help support the patient in getting her disability claim" explains that while the FCE places Plaintiff at a sedentary capacity, her depressive disorder makes her incapable of doing any meaningful work. (A.R. at 170). He also submitted a detailed discussion of the numerous problems with Plaintiff's back and the diagnosis of her condition.[3] (A.R. at 172–73). Dr. Owusu's one-page, handwritten letter states that he met with Plaintiff one day to conduct a psychiatric examination and that he diagnosed her as having Major Depressive Disorder. Without any medical records or findings, Dr. Owusu concluded that Plaintiff was quite disabled by her pain and her depression. (A.R. at 172).

In addition to the letters of Dr. Florente and Dr. Owusu, Plaintiff submitted to another FCE at her own expense on Novem-

---

2. Hartford arranged for the FCE in order to determine the status of Plaintiff's claim of continued disability. (A.R. at 273, 246–47).

3. This discussion does, however, appear to be based on prior examinations and medical records and not based on any new tests.

ber 6, 2002. (A.R. at 175–86). The examination revealed numerous inconsistencies between Plaintiff's diagnosis and her demonstrated capabilities and complaints of pain. The Examiner noted that her behavior indicated the presence of non-organic symptomatolgy and the possible exaggeration of symptoms. (A.R. at 177). Importantly, the Examiner recorded that Plaintiff's pain rating, strength presentation, movement patterns, and limitations are not consistent with her diagnosis and that Plaintiff gave valid effort only 39% of the time. (A.R. at 185). The report does, however, include indications of significant pain such as holding and blowing when doing exercises (A.R at 182) and sitting for just three minutes before asking to stand. (A.R. at 186).

Hartford thereafter had a medical records review performed by Independent Medical Consultant and board certified physician Dr. Brian Mercer. (A.R. at 82–83). Dr. Mercer reviewed Plaintiff's medical history, her medical records, both FCE's, the letters from Dr. Florente and Dr. Owusu, and spoke with Dr. Florente to clarify his statements. Dr. Mercer ultimately concluded that the objective medical evidence of Plaintiff's condition would not preclude her from working full time at a sedentary level. (A.R. at 89–91). Moreover, "[i]ndividuals with the degree of degenerative changes seen in the lumbosacral region, as well as the left T3–4 disc herniation, generally would be capable of functioning at a full-time sedentary level." (A.R. at 89). Finally, he determined that the multiple inconsistencies in effort and performance indicate "the presence of embellishment of symptomatology." (A.R. at 90).

Hartford also sought an independent review of Plaintiff's psychological condition from Dr. Melvyn Lurie, board certified in psychiatry. (A.R. at 95). Dr. Lurie noted that the medical record was quite meager as Plaintiff had not submitted any records on her depression. (A.R. at 96). She had been prescribed Zoloft and had been noticed by emergency room staff to have mood swings. (A.R. at 95–96). Dr. Lurie also spoke with Dr. Owusu who explained that Plaintiff had only met with him once for the purpose of getting the letter and that he did not believe that she was seeing a psychotherapist regularly. (A.R. at 96). He also stated that he did not know of any functional limitations due to Plaintiff's mental state. (A.R. at 96).

After reviewing all of the above information and documentation, Hartford affirmed its denial of long term benefits in a letter to Plaintiff dated March 18, 2003. (A.R. at 105—10). Plaintiff now asks this Court to reverse Hartford's decision and reinstate her long term disability benefits.

## II. Standard of Review

The Eleventh Circuit has adopted the following standards for reviewing a Plan Administrator's denial of ERISA benefits: 1) *de novo* where the plan does not grant the administrator discretion; 2) arbitrary and capricious where the plan grants the administrator discretion: and 3) heightened arbitrary and capricious where there is a conflict of interest. *Buckley v. Metro. Life*, 115 F.3d 936, 939 (11th Cir.1997); *HCA Health Serv. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir.2001). To determine the proper standard of review, all of the plan documents are reviewed. *Shaw v. Connecticut General Life Ins. Co.*, 353 F.3d 1276, 1282 (11th Cir.2003); *Curran v. Abbott Labs. Extended Disability Plan*, 331 F.Supp.2d 1376, 1381 (M.D.Fla. 2004). Here, the Plan documents unequivocally grant Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Pol-

icy." (Plan at 30). Such discretion warrants application of a deferential standard of review.

■ Under both the "arbitrary and capricious" and "heightened arbitrary and capricious" standards, "it is fundamental that the fiduciary's interpretation first must be 'wrong' from the perspective of de novo review before a reviewing court is concerned with the self-interest of the fiduciary." *Brown v. Blue Cross/Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1566 n. 12 (11th Cir.1990); *Meyer v. Hartford Life and Accident Ins. Co.*, 320 F.Supp.2d 1256, 1264 (M.D.Fla.2004). A decision is legally "wrong" when the court, after conducting a *de novo* review of the entire administrative record, disagrees with the administrator's interpretation of the Plan. *Id.* Only when the court disagrees with the decision does it gauge the self-interest of the plan administrator. *HCA Health Serv.*, 240 F.3d at 993–94; *see also Lee v. Blue Cross/Blue Shield*, 10 F.3d 1547, 1550 (11th Cir.1994). If there is no conflict-of interest then the inquiry is over and the proper standard of review is arbitrary and capricious. *HCA Health Serv.*, 240 F.3d at 993–94, If a conflict of interest is present, then the heightened arbitrary and capricious standard is used.[4] *Id.*

■ Under the heightened arbitrary and capricious review, "the burden shifts to the claims administrator to prove that its interpretation of the plan is not tainted by self-interest." *HCA Health Serv.*, 240 F.3d at 994. This burden is satisfied by showing that the wrong, but reasonable interpretation of the Plan benefits the class of participants and beneficiaries. *Id.; see also Migliaro v. IBM Long–Term Disability Plan*, 231 F.Supp.2d at 1177.

### III. Analysis

■ The Court must start with a *de novo* review of the Administrative Record to determine if Hartford's interpretation of the Plan and the subsequent denial of Plaintiff's benefits was "wrong." Despite Plaintiff's unquestionable and very unfortunate discomfort, this Court cannot hold that the plan administrator's decision to deny Plaintiff long term disability benefits was "legally wrong." The record, in fact, is full of evidence supporting Hartford's denial. Dr. Florente, Plaintiff's treating physician, thought an FCE was necessary to determine Plaintiff's extent of physical impairment. (A.R. at 232). The FCE sought by Hartford concluded that Plaintiff was capable of performing full-time sedentary work. (A.R. at 205). Dr. Florente then agreed, albeit in a one word reply to a questionnaire, with the FCE's conclusions and that Plaintiff was capable of returning to work. (A.R. at 199) The follow-up FCE that Plaintiff independently arranged was consistent with the findings of the original FCE that Plaintiff can sit, stand, and walk to a sufficient degree that she can perform her job. (A.R. at 173–86).

Although both examinations noted that Plaintiff exhibited signs of significant pain such as blowing, tearing up, shifting her weight when standing, and constant complaints of pain, both FCE's importantly concluded that Plaintiff's complaints were inconsistent with her medical diagnosis and that she rarely gave full effort to the exercises asked of her. Moreover, after reviewing Plaintiff's entire record, Dr. Mercer, a board certified physician, and Dr. Lurie, board certified psychiatrist, affirmed the lack of functional limitations on Plaintiff due to physical or mental prob-

---

4. When the administrator making benefit decisions is also the insurance company responsible for paying the claims, which is the present situation, the heightened arbitrary and capricious standard of review is proper due to the possible conflict of interest. *Brown v. Blue Cross/Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1563–64 (11th Cir.1990).

lems. (A.R. at 86, 89–91, 96) Significantly, Dr. Mercer agreed that the multiple inconsistencies in Plaintiff's two FCE's support the notion that she was exaggerating her symptoms.[5] (A.R. at 90).

While Plaintiff argues that Hartford ignored the opinions of Plaintiff's treating physicians, both independent consultants directly acknowledged the opinions of Plaintiff's treating doctors, Dr. Florente and Dr. Owusu, and took those opinions into account when making their review. Moreover, it is not unreasonable to give less weight to a doctor who changes his concurrence with an objective FCE based on conversations with the patient about her discomfort (A.R.93) or less credence to a psychiatrist who writes a one-page, handwritten diagnosis of a patient he has never met except to write her a letter supporting a disability claim (A.R.96). "Nothing in [ERISA] suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does [ERISA] impose a heightened burden of explanation on administrators when they reject a treating physicians' opinion." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

Plaintiff also argues that *Migliaro v. IBM Long–Term Disability Plan,* 231 F.Supp.2d 1167 (M.D.Fla.2002) dictates a different conclusion. The Court disagrees. While some factual similarity between the two cases is acknowledged, including similar back pain suffered by both plaintiffs, significant differences in the cases make Plaintiff's reliance on *Migliaro* misplaced. First, the only FCE performed in *Migliaro* contained an express finding that "Plaintiff could not work an eight-hour

day." 231 F.Supp.2d at 1179. In the present situation, the two FCE's noted complaints and manifestations of pain, but both reached the bottom line conclusion that Plaintiff was capable of performing the tasks required of full time sedentary work. Second, the *Migliaro* court found that the independent review did not indicate the use of any objective evidence or records in affirming the plan administrator's denial of benefits. That court, instead found "no indication from plaintiff's physicians that they ever diagnosed her exclusively by her complaints of pain." *Migliaro,* 231 F.Supp.2d at 1179. In this case, however, the independent medical consultants examined every medical record Plaintiff provided in affirming Hartford's denial of benefits. Moreover, there is no objective evidence to support Dr. Owusu's opinion and he even admitted to relying completely on Plaintiff's complaints in writing his letter. (A.R. at 102). Dr. Florente's change of heart regarding Plaintiff's disability likewise appears to be based entirely on her subjective descriptions of pain because he performed no additional tests after his original concurrence with the FCE. (A.R. at 92–94). Lastly, the *Migliaro* court was quite concerned that the plan administrator had selectively reviewed the medical evidence when denying the plaintiff's claim. It should be quite clear by this point that this Court finds that a thorough and proper review was undertaken and abundant record evidence supports Hartford's decision.

As the Court finds that Hartford's denial of benefits was not "legally wrong," the inquiry must stop here. The Court is sympathetic with Plaintiff and has no doubt that she does suffer real and un-

---

5. One inconsistency the Court finds significant is the great difference in duration Plaintiff could sit between the first FCE and the second. Plaintiff could tolerate sitting for 44 minutes in the first FCE (A.R.209), but could only sit for 3 minutes in the second exam (A.R.181). Dr. Mercer and Hartford could reasonably interpret these differences to suggest exaggeration in symptoms.

pleasant pain. However, the Court is bound by the legal standards set forth by Congress and interpreted by higher courts. In ERISA situations, those standards require great deference to the discretion of the plan administrator. *HCA Health Serv. of Georgia v. Employers Health Ins. Co.*, 240 F.3d 982, 994 (11th Cir.2001). As Hartford determined that Plaintiff was capable of full time sedentary work and the court cannot find that decision to be arbitrary and capricious, Hartford's decision must be affirmed.

## IV. *Conclusion*

It is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Doc. No. 20, filed October 1, 2004) is **GRANTED** and Plaintiff's Motion for Summary Judgment (Doc. No. 22, filed October 1, 2004) is **DENIED**. Accordingly, judgment is entered in favor of Defendant Hartford Life Insurance Company. The Clerk shall close the case file.