[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14852

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 16, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00291 CV-J-99-MMH

JOHN S. MORDECAI,

                                        Plaintiff-Appellant,

versus

STANDARD INSURANCE COMPANY,
a foreign corporation,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 16, 2005)

Before TJOFLAT, PRYOR and ALARCÓN*, Circuit Judges.

ALARCÓN, Circuit Judge:

John Mordecai appeals from the district court's order denying Mr.

Mordecai's motion for summary judgment and granting Standard Insurance Company's ("Standard") cross-motion for summary judgment. Mr. Mordecai contends that the district court erred in granting Standard's motion because he offered a reasonable alternative interpretation that rivaled Standard's interpretation of the "Deductible Income" provision of his employer's group long term disability insurance policy ("Policy").

We affirm because we conclude that Standard's interpretation of the language of the Policy was reasonable and Mr. Mordecai did not offer a reasonable alternative interpretation of the Policy.

I

Mr. Mordecai was a plaintiff's personal injury lawyer at the law firm of Harris, Guidi, Rosner & Mordecai. He was insured under the firm's Policy, which benefits were administered and paid for by Standard. After suffering from depression and anxiety for several years, Mr. Mordecai applied for and was granted long term disability ("LTD") benefits by Standard.

Standard determined that Mr. Mordecai's monthly benefit was the $10,000 maximum payable under the Policy. The Policy allows Standard to reduce Mr. Mordecai's benefit amount by any deductible income ("Deductible Income") he receives. The Policy defines Deductible Income as "[a]ny earnings or

2

compensation included in Predisability Earnings which you receive or are eligible to receive while LTD Benefits are payable." Standard did not include in its calculation of predisability earnings any income that Mr. Mordecai might receive after disability, *i.e.*, contingent fee recoveries for work performed prior to his disability but not received until after he became disabled.

Based on the Deductible Income provision, Standard reduced Mr. Mordecai's $10,000 benefit by the post-disability income he received for work he performed on cases before becoming disabled. Because Mr. Mordecai's post-disability income was more than his LTD benefit of $10,000, Standard determined that he was entitled to the minimum benefit of $1,000.

Thereafter, Mr. Mordecai filed this action against Standard in state court alleging that Standard breached the Policy by including his post-disability income as Deductible Income. Standard removed this action to the district court on the basis of federal question jurisdiction and the preemption of Mr. Mordecai's state law claims by the Employment Retirement Income Security Act, 29 U.S.C. §1001, et seq. ("ERISA").

Mr. Mordecai filed a motion for summary judgment in which he argued that his post-disability income was not Deductible Income under the Policy. Standard opposed the motion and filed a cross-motion for summary judgment. The district

3

court granted Standard's motion for summary judgment and denied Mr. Mordecai's motion holding "[b]ecause Defendant, in computing Plaintiff's Predisability Income, considered as income the contingency fees and bonuses paid by the Firm and received by the Plaintiff predisability, the decision to look to these same sources of income in computing Plaintiff's Deductible Income was proper." Mr. Mordecai has filed a timely appeal from the district court's orders.

## II

Mr. Mordecai contends that the district court erred in granting Standard's motion for summary judgment because Standard's interpretation of the "Deductible Income" provision of the Policy, pursuant to which Standard reduced Mr. Mordecai's LTD Benefit, was "wrong." We review an appeal from a grant of summary judgment under the plenary standard of review. *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1559 (11th Cir. 1990). Generally, we review a claims administrator's denial of ERISA benefits under a *de novo* standard. *Florence Nightingale Nursing Service, Inc. v. Blue Cross/Blue Shield of Alabama,* 41 F.3d 1476, 1481 (11th Cir. 1995). However, because the plan documents at issue explicitly granted Standard discretion to determine eligibility or construe terms of the Policy, and Standard served as the decision-making fiduciary for benefits that were paid out of its own assets, we review its

4

decision to deny benefits under a "heightened," or less deferential, arbitrary and capricious standard of review. *HCA Health Services of Georgia, Inc. v. Employers Health Insurance Co.,* 240 F.3d 982, 992 (11th Cir. 2001); *Torres v. Pittston Co.*, 346 F.3d 1324, 1334 (11th Cir. 2003).

Under the heightened arbitrary and capricious standard of review, our threshold procedure is a *de novo* review of the administrative record to determine the legally correct interpretation of the disputed provision. *Brown*, 898 F.2d at 1566 & n.12. That is, we must determine whether Standard's interpretation of the Policy was "wrong." *Id*. To that end, we must consider whether Mr. Mordecai has proposed a reasonable alternative interpretation of the Policy, one that can rival Standard's interpretation. *Brown*, 898 F.2d at 1570. If Mr. Mordecai establishes a reasonable interpretation, then under *contra preferentem*, we accept his interpretation as the correct interpretation. *Florence Nightingale Nursing Service, Inc*. 41 F.3d at 1481.

If we determine that Mr. Mordecai's interpretation is reasonable, however, he does not automatically prevail. Under the arbitrary and capricious standard of review, we then evaluate whether Standard was arbitrary and capricious in adopting an alternative interpretation of the Policy in a manner that was tainted by self-interest. *Brown*, 898 F.2d at 1570.

5

Turning to the first step of our analysis, we must consider whether Standard's interpretation of the disputed Policy provision was "wrong." *Brown*, 898 F.2d at 1566 & n.12. The Policy defines Deductible Income, in part, as "[a]ny earnings or compensation included in Predisability Earnings which you receive or are eligible to receive while LTD Benefits are payable." (ER 2, Exh. A, p. 8.) The Policy expressly states that the "earnings in effect" on which Predisability Earnings are based, include commissions and bonuses. (ER 2, Exh. A, p. 7.)

The record shows that Mr. Mordecai advised Standard that the pay he received after he became disabled "was for my work on cases that were completed before [he became disabled] or for work performed on cases that were resolved afterward." (R 1-22, Exh. B.) Standard contends that because Mr. Mordecai's "commissions and bonuses" were the type of income included in calculating Mr. Mordecai's Predisability Earnings, "it was proper to treat [contingent] fee recovery income as Deductible Income under the provision incorporating 'any earnings or compensation included in Predisability Earnings' as it was received 'when disability benefits were payable.'" (Red Br. at 25.) Standard argues that its "interpretation of the Deductible Income provision is reasonable because it relies upon the express terms of the plan and provides a logical result in view of the

purpose of the Policy of guaranteeing a basic level of income." (Red Br. at 26.) We agree.

The commissions Mr. Mordecai received post-disability were the type of "earnings in effect" upon which his Predisability Earnings were based. Standard's interpretation that they were included in Predisability Earnings, and therefore constituted Deductible Income because Mr. Mordecai received them "while LTD Benefits are payable," is reasonable. The fact that Standard "did not and would not include in its calculation of Predisability Earnings amounts that Mordecai 'might' receive after disability, i.e., [contingency] fee recoveries that were earned but not yet received" (Red Br. at 9) is consistent with the plain language of the Policy. As Standard explained, the Policy expressly limited Predisability Earnings to Mr. Mordecai's commissions and bonuses received in the 12 and 36 months preceding his disability. Speculative "commissions and bonuses" were not included in Standard's calculation of Predisability Earnings.

Because compensation for legal work performed under a contingency fee agreement is dependent on a disposition that favors a client, whether any fee will be paid is speculative. It could not properly be included in calculating Mr. Mordecai's Predisability Earnings. To the extent Mr. Mordecai received contingency fees post-disability, they constituted Deductible Income.

7

While we agree with Standard's interpretation of the Policy, we must consider whether Mr. Mordecai has "proposed a sound interpretation of the plan, on that can rival [Standard's] interpretation." *Brown*, 898 F.2d at 1570. Mr. Mordecai contends that Deductible Income is limited to the dollars that were *actually included* in Standard's calculation of his LTD Benefit. We disagree.

If Deductible Income were limited to the actual dollars included in the calculation of Mr. Mordecai's LTD Benefit based on the income Mr. Mordecai received predisability, the provision of the Policy that includes earnings received "while LTD Benefits are payable" as Deductible Income would be rendered meaningless. Mr. Mordecai's interpretation would require Standard to have included, in calculating Mr. Mordecai's LTD Benefit, speculative income Mr. Mordecai might receive post-disability in order for it to constitute Deductible Income. Because the Policy expressly states that the calculation of Predisability Earnings is based on commissions and bonuses Mr. Mordecai received before disability, Mr. Mordecai's interpretation of the Deductible Income provision runs contrary to the express terms of the Policy.

Further, Mr. Mordecai's interpretation would result in a windfall to him because he would be entitled to receive a full, unreduced LTD Benefit, as well as any income he received post-disability for work performed on a contingent fee

8

agreement before he became disabled, even though Standard would not have been allowed to consider that amount in calculating what Mr. Mordecai earned before disability because the possibility in receiving any payment was speculative.

Accordingly, we hold that Mr. Mordecai did not offer a reasonable alternative interpretation of the Policy to rival Standard's interpretation. As a result, Standard's correct interpretation controls. Thus, the court need not reach the second step of the *Brown* analysis concerning whether Standard acted arbitrarily and capriciously in interpreting the Policy in a manner that was tainted by self-interest. *See Brown*, 898 F.2d at 1568, 1570 (holding that if the court determines that the claimant has proposed a sound interpretation of the plan, it thereafter evaluates whether the fiduciary was arbitrary and capricious in adopting a different interpretation that was tainted by self-interest).

AFFIRMED.